EDMUND HARRIS v. E. S. W. DROUGHT, *Treasurer, &c.*

TAXES; *Injunction Properly Refused.* In the year 1873, H. was the owner
of lots three and four, in block ninety-four, in the city of Wyandotte;
the taxes for 1873 were not paid; in 1874, the lots were sold by the
county treasurer to N. The taxes for 1874, 1875, 1876 and 1877 were
paid by N., who in 1877 obtained a tax deed from Wyandotte county.
N. brought an action against H. to obtain possession of the property,
and was defeated for the reason that the lots were not sold at public auc-
tion, but at private sale. Afterward, the commissioners of Wyandotte
county refunded to N. the sums he had paid for taxes, with interest at
ten per cent. The clerk of Wyandotte county entered upon the tax roll
for 1878 the taxes of 1873 to 1877 inclusive, and also the taxes of 1878.
H. paid the tax of 1878, and when the county clerk was about to enter
the lots upon the delinquent tax book for sale, H. filed his petition for a
permanent injunction to restrain the collection of said taxes by sale or
otherwise. *Held,* The injunction was properly refused by the trial court.

### Error from Wyandotte District Court.

ACTION brought by *Harris* against *Drought,* as treasurer
of Wyandotte county, and the county clerk and the commis-
sioners of that county, to perpetually enjoin the defendants
from placing certain lots situate in the city of Wyandotte,
on the delinquent tax list for 1879, etc. The opinion states
the facts. Trial at the December Term, 1879, of the district
court, and judgment for the defendants. The plaintiff brings
the case here.

*D. B. Hadley,* for plaintiff in error.

*James S. Gibson,* for defendants in error.

The opinion of the court was delivered by

HORTON, C. J.: In the year of 1873, Edmund Harris was the owner of lots 3 and 4, in block 94, in the city of Wyandotte, Kansas. The taxes assessed against the property for that year, $15.75, were not paid, and in 1874, it was sold by the county treasurer to one George P. Nelson. The taxes for the years 1874, 1875, 1876, and 1877, were regularly paid by the purchaser, Nelson, till the three years from the date of sale had expired, when he took a deed for the lots from Wyandotte county, dated in the fall of 1877. Nelson brought an action against Harris, to obtain possession of the property. The issue was tried at the April term, 1878, and Nelson failed on the trial for the reason that the county treasurer did not sell the lots at public auction, but at private sale, and judgment was rendered in favor of Harris. Afterward the commissioners of Wyandotte county paid Nelson the sums he had paid for taxes, with interest at ten per cent. thereon from the date of payment in each year. Thereupon the clerk of Wyandotte county entered upon the tax roll for said county for the year 1878, the sums answering to the sums paid by Nelson for the taxes from 1873 to 1877, inclusive. He also entered upon the tax roll the taxes assessed for the year 1878, being $31.27, which Harris paid. In July, 1879, as the county clerk was about to enter these lots upon the delinquent tax books for sale the following September, Harris filed his petition and applied to the judge at chambers for a temporary injunction, which was refused, and he excepted. Service of summons was afterward made upon the county treasurer, E. S. W. Drought, the county clerk, D. R. Emmons, and the county commissioners. The action was heard upon its merits at the December term, 1879, a permanent injunction against the county officers refused, and judgment rendered against plaintiff for costs, to which plaintiff duly excepted. A motion for new trial was duly made, overruled, excepted to, and plaintiff brings the case to this court.

The question is, whether upon the facts presented, the court

committed error in refusing to grant the injunction prayed for? Sec. 99, ch. 107, Gen. Stat. 1868, provides:

"If any county treasurer shall unavoidably omit or fail to sell any lands or town lots for unpaid taxes on the first Tuesday of May, he shall advertise and sell such lands or town lots on the fourth Monday of June next ensuing; and such advertisement and sale shall conform in all respects to the provisions of this act, and shall be as binding and valid as if such sale had been made on the first Tuesday in May."

Sec. 125, ch. 107, Comp. Laws 1879, adopted in place of said sec. 99, reads:

"If any county treasurer shall unavoidably omit or fail to sell any lands or town lots for unpaid taxes on the first Tuesday of September, he shall advertise and sell such lands or town lots on the fourth Monday of October next ensuing, and such advertisement and sale shall conform in all respects to the provisions of this act, and shall be as binding and valid as if such sale had been made on the first Tuesday in September."

Sec. 54, ch. 107, Comp. Laws 1879, is as follows:

"That it shall be the duty of county clerks to cause all lands in their respective counties, that for any reason have not been assessed for taxation, or have escaped taxation for any former year or years, when the same were liable to taxation, to place the same upon the tax roll, and charge up or carry out an assessment against said lands equal to, and in accordance with the assessment that would have been charged against said lands had they been properly listed and assessed at the time they should have been assessed under the provisions of the general laws governing assessment and taxation of lands: *Provided,* That no lands shall be assessed under the provisions of this section, where the same have changed ownership other than by will, inheritance, or gift."

These various sections were enacted to prevent the escape of lands from taxation by omissions or irregularities. Within the principle announced by the majority of the court in *Haxton v. Harris,* 19 Kas. 511, there was no payment of taxes in the strict sense of the term by Nelson. He never assumed to act as the agent of Harris, or to discharge the obligations of the property for the taxes. His purchase failed, but he did not thereby become an agent to pay. Though

the sale for taxes to Nelson was invalid, yet as the county has been compelled to refund all the money paid by Nelson, the tax lien in behalf of the county has not been destroyed, the taxes have not been paid, and are a valid lien against the property. Further, the plaintiff has not been injured by any of the transactions concerning the irregular purchase, or the payment of money on the irregular certificate of sale. Nelson, in his action to recover possession of the real estate, might have had the taxes paid by him, with interest and costs, declared a lien upon the land, in accordance with the provisions of §117 of the tax law of 1868, as modified in the tax law of 1876. (*Fairbanks v. Williams*, ante, p. 16.) If this had been done, plaintiff would have been required to pay a sum largely in excess of $490.39, (the sum entered by the clerk for the taxes of 1873, 1874, 1875, 1876 and 1877,) to redeem the lots from such lien.·

Again, by the conduct of the county officials and Nelson, the plaintiff has obtained additional time in which to pay the taxes of 1873, 1874, 1875, 1876 and 1877, without interest thereon, and so has been really benefited by their acts. Under such circumstances, it cannot be said that he has presented any equitable cause for the interference of the court in his behalf; therefore no error was committed in refusing the injunction.

Counsel suggests that on May 24th, 1878, plaintiff sold and conveyed to S. F. Mather the lots, and under the proviso in § 54, ch. 107, Comp. Laws 1879, the ownership had so changed that Mather could sell and convey a title in fee, regardless of the taxes prior to the tax of 1878. Under the general finding of the court, this question is not in the case. We do not know that the said conveyance was made in good faith, or that it was anything more than a mere mortgage. It would seem to have been intended for the latter purpose.

The judgment of the district court will be affirmed.

All the Justices concurring.