HARRIET N. SPICER v. LUCY M. ROWLAND.

TAXES—*Sale for Non-Payment—Purchase by County Treasurer.* A county treasurer is disqualified to become a purchaser of land sold by himself at a tax sale. A sale made directly to himself or to a firm of which he is a member is absolutely void, and may be called in question by a purchaser at a subsequent tax sale or other interested party.

*Error from Lyon District Court.*

EJECTMENT, by *Spicer* against *Rowland.* Trial by the court at the June term, 1886, and finding and judgment for the defendant. The plaintiff brings the case here. The opinion states the facts.

*Gillett, Fowler & Sadler,* for plaintiff in error.
*Cunningham & McCarty,* for defendant in error.

The opinion of the court was delivered by

JOHNSTON, J.: This was an action of ejectment, brought by Harriet N. Spicer in the district court of Lyon county, on January 23, 1886, against Lucy M. Rowland, for the recovery of lot No. 168, Market street, in Emporia. The plaintiff claimed under a tax deed executed May 4, 1869, and recorded May 17, 1869, which recited that the lot was sold on May 3, 1866, to Carter & Fraker, for the sum of $1.43, being the taxes and charges against the lot for the year 1865; and further, that Carter & Fraker, on January 23, 1868, assigned the tax-sale certificate to Noyes Spicer, to whom the tax deed was executed. At the trial in June, 1886, the plaintiff offered and read in evidence the above-mentioned tax deed, and also a conveyance from Noyes Spicer, the grantee in the tax deed, to herself, and then rested her case.

The defendant claimed the property under and read in evidence a tax deed to E. M. Forde, executed on December 26, 1881, which was recorded on January 7, 1882. It was thereupon admitted that the defendant, through a chain of intermediate conveyances from E. M. Forde to herself, owns all the interest conveyed by that tax deed, and has been in the possession of the lot under said title for three years last past. She then offered testimony to show that Fraker, of the firm of Carter & Fraker, named as purchasers in the plaintiff's tax deed, was J. C. Fraker, who was the county treasurer of Lyon county in 1866, and the officer who sold the lot to Carter & Fraker.

The cause was then submitted, the plaintiff requesting the court to find whether, upon the evidence then before the court, the plaintiff had any title to the lot in controversy prior to the execution of the defendant's tax deed, and the court responded by a finding that the evidence showed that the tax deed to Noyes Spicer, the plaintiff's grantor, was void, and

consequently she had failed to show any title to the lot. Thereupon the plaintiff requested the court to open the case and permit her to offer evidence that she held the original title from the United States, and permission was granted. She then offered to show by the records from the office of the register of deeds a chain of conveyances from the United States to herself, but this testimony was excluded upon the ground that it was not apparent that the plaintiff did not have in her possession or under her control the original deeds of conveyance, and that, therefore, no foundation had been laid for the introduction of secondary evidence. Counsel for the plaintiff then moved for a continuance of the cause to enable them to obtain the deposition of the plaintiff in order to show that she had not in her possession or under her control any of the original deeds in her chain of title from the United States, but this motion was overruled. The court then, upon all the evidence before it, found for the defendant, and rendered judgment accordingly.

The plaintiff contends that the court erred in holding that her tax deed was void, and also in rejecting testimony, and in refusing a continuance. The testimony offered satisfactorily shows that Fraker, of the firm of Carter & Fraker, was the county treasurer of Lyon county in 1866, and was therefore the purchaser and seller of the lot in controversy, and the district court so found. The law does not permit an officer to assume such incompatible positions. The duties owing by him to the state and to the owner of the land are wholly inconsistent with the position of the purchaser. It was expressly held in *Haxtun v. Harris*, 19 Kas. 511, that "a treasurer cannot be a purchaser, either directly or indirectly, at tax sales conducted by himself." In *Perkins v. Thompson*, 3 N. H. 145, the court remarked that "the soundest policy forbids that any person should be the purchaser of that which he is appointed to sell. The characters of vendor and purchaser of the same article at the same time are inconsistent, and cannot be united in the same person." In *Mills v. Goodsell*, 5 Conn. 478, it was held that an officer was disqualified from

purchasing at his own sale, "and the reason is that otherwise great frauds might be practiced without detection. The law takes from the agent the power of being dishonest by removing the means of temptation." And further along it is remarked that, "It is in vain to urge that he gave more than anyone else would; that there were no bidders. The law cuts up, root and branch, the power to purchase and the temptation to defraud. It will not permit an inquiry into the fairness or the unfairness of the transaction." The treasurer is a minister of the law, and is therefore more than an agent or trustee of the owners of the lands which he sells. The public are interested in having the payment of taxes promptly and faithfully enforced, and the sales of lands honestly conducted. The owners are interested in a free and unrestrained competition, and that the smallest portion of the tract against which the taxes are charged shall be sold for their payment. If the treasurer is allowed to purchase, it would be to his interest to obtain the whole or greater part of the tract for the taxes levied against it. And again, if such a practice was tolerated the treasurer would be subjected to the temptation of omitting to offer property and of subsequently entering a sale of the same to himself, and thus holding the amount of the taxes from the treasury until such a time as he chooses to make a record of the same; or he might change the records and reduce the amount of taxes charged against land which he purchased from himself. Indeed, there are many ways in which the public might be prejudiced if the treasurer was allowed to assume the relation of buyer and seller where his self-interest and his integrity would be brought directly in conflict. Adopting the language of the supreme court of Michigan: "It is our duty to remove, so far as we can, all temptation to abuse the important trusts committed to county treasurers. This can be best effected by declaring their incapacity to become purchasers at tax sales, and by treating as void any purchase made by them or by any person for them." (*Clute v. Barron*, 2 Mich. 192.)

It is argued in behalf of the plaintiff, that the sale is only

voidable, and that the defendant cannot attack its validity. In case of a sale made to himself by a private agent or trustee, the principal or *cestui que trust* may avoid the sale and retain the property, or he may confirm the sale and accept the consideration. Strangers, or those not interested, cannot call the validity of such a sale in question. But more than private interests are involved here where the county treasurer acts. The sale of property for taxes by a public officer is a matter of public concern. It affects others than the owner of the property sold, as we have seen. Not only would it open up an avenue for fraud upon those whose property is sold, but it would tend to corrupt official integrity and prostitute the public service. On grounds of morality and public policy, it is better to declare that the officer is disqualified to purchase under any circumstances, and that a sale made to himself is not only voidable, but is absolutely void. Aside from this general principle, we have a statute which provides that "no sheriff, or other officer, making the sale of property, either personal or real, nor any appraiser of such property, shall, either directly or indirectly, purchase the same, and every purchase so made shall be considered fraudulent and void." (Comp. Laws 1879, ch. 80, § 462.) This provision was interpreted in a case where a sheriff became a purchaser at his own sale, and the conclusion was reached that the transaction, being against the policy of the law and contrary to statute, should be treated as absolutely void. (*Galbraith v. Drought,* 24 Kas. 590; see also *Cunningham v. Jones,* 37 id. 477.) Fraker being incapable of becoming a purchaser, there was no sale, and the statutes of limitations invoked do not apply. Any interested party with a standing in court could call in question the validity of that sale and deed. But this defendant cannot be regarded as a stranger. She had a tax deed, executed twelve years after the plaintiff's deed was issued, which was valid upon its face, and if regular and valid it vests the purchaser with a complete and perfect title which destroys that held by the original owner or any previous tax-title purchaser. The plaintiff made no attack upon the de-

fendant's deed, and there is a general finding in favor of the defendant upon the whole evidence in the case. Possibly no challenge was made of the validity of the deed, because of the finding already made by the court that the tax deed of plaintiff was void; and this finding we think must be sustained.

The matter of reopening the case and of hearing original testimony, as well as the continuance of the cause to enable the plaintiff to obtain additional testimony, with which she should have been prepared, was within the discretionary power of the court, and under the circumstances we cannot say that there has been such an abuse of discretion as would warrant a reversal of the judgment; it will therefore be affirmed.

HORTON, C. J. concurring.

VALENTINE, J.: I cannot concur in all that is said or decided in this case. I dissent upon the particular facts of this case. I agree with my brethren, that when land is sold at a tax sale to the county treasurer, or to a firm of which he is a member, no indefeasible tax title can ever be obtained on such tax sale by the treasurer, or by any member of his firm, or possibly by any person with notice, unless the sale has been ratified and confirmed, or the irregularity cured or waived by some act or acts on the part of the prior owner or his grantees; nor can an indefeasible title be obtained upon such a sale even by a *bona fide* purchaser without notice, except by a ratification, confirmation, waiver or estoppel on the part of the prior owner or his grantees, or by the complete running of some statute of limitations. But I dissent from the views of my brethren to this extent: I believe that a subsequent *bona fide* purchaser without notice of the irregularity in the tax sale may obtain a good and indefeasible title by the complete running and operation of the statute of limitations. The statute in comprehensive terms so provides, and there is no such exception as is now interpolated. There is no great hardship in this. A tax deed cannot be executed until at least three years have elapsed after the tax sale has been consummated, and the prior

owner has at least five years more after the tax deed has been executed and recorded, within which to defeat or avoid the tax deed, making eight years in all within which the prior owner may at any time defeat or avoid any title attempted to be founded upon any such irregular tax sale. I think we all agree that the prior owner, whatever his title may be, whether a *tax title or otherwise*, has five years after the recording of a subsequent tax deed within which to commence an action to defeat or avoid any title attempted to be founded upon such subsequent tax deed.