JOHN W. SPONABLE v. GERTRUDE A. WOODHOUSE.

TAX SALE—*Purchase by County Treasurer.* A purchase, either directly or indirectly, by a county treasurer at his own sale, is invalid. The money paid into the county treasury on such purchase is forfeited to the public, and cannot be recovered back by the treasurer from the county, nor from the owner of the land, either in law or in equity.

*Error from Johnson District Court.*

ACTION to quiet title. Judgment for the plaintiff, *Woodhouse,* at the January term, 1889. The defendant, *Sponable,* comes to this court. The facts are stated in the opinion.

*Carroll & Sheldon,* for plaintiff in error.

*S. T. Seaton,* and *J. W. Parker,* for defendant in error.

Opinion by STRANG, C.: Action to quiet title to the northwest quarter of section 15, township 13, range 22, in Johnson county, Kansas. On the trial of the case below, it was admitted that the plaintiff, Gertrude A. Woodhouse, held title to said land through a regular and unbroken chain of conveyances from the government of the United States of America to herself, and that all of said conveyances were duly recorded in the office of register of deeds of Johnson county, Kansas. It was also admitted that said Gertrude A. Woodhouse and her grantors had been in the actual, open, quiet and peaceable possession of said land for more than 15 years last past before the commencement of this action, under a claim of title

thereto, and were in possession thereof when this suit was begun. The defendant claimed under a tax deed for the land in dispute, from the clerk of Johnson county, Kansas, to J. W. Sponable, dated June 28, 1866, based upon a tax-sale certificate of May, 1864, for taxes of 1863, which deed was introduced by the defendant below in support of his claim.

It was admitted in behalf of the defendant below, that Gertrude A. Woodhouse and her grantors failed to pay the taxes on the land in dispute for the years 1863, 1868, 1870, 1871, and 1874, and that said taxes were paid by J. W. Sponable, which, together with penalties, interest, and costs, amounted to $139.04, December 14, 1874, and that none of said taxes were ever returned to J. W. Sponable by said Gertrude A. Woodhouse, or her grantors, nor by anyone else. It was admitted in rebuttal, in behalf of the plaintiff, that at the time of the sale of the land in controversy for the taxes of 1863, on the 10th of May of that year, J. W. Sponable, defendant below, was county treasurer of Johnson county, Kansas, and continued to hold said office until 1865. The proof showed, in rebuttal, that W. M. Shean bid off the land in controversy at treasurer's sale for taxes, May 10, 1864, and obtained a tax-sale certificate; that on the 12th day of May, 1864, said Shean assigned said certificate to J. W. Sponable, the defendant below, who was at the time treasurer of the county, and also son-in-law of Shean. A number of other tax-sale certificates, issued to said Shean and others, on the 10th and 11th days of May, 1864, for other lands, were introduced by the plaintiff below, to show that they also were assigned on the 12th of May, 1864, to J. W. Sponable.

On the foregoing facts and the pleadings in the case, the cause was tried by the court, January 28, 1889, and taken under advisement until March 26, 1889, when the court found for the plaintiff, that the facts stated in her petition were true. The defendant thereupon filed a motion asking the court to ascertain the amount of taxes paid by him on the land, and require the plaintiff to pay the same to him, together with interest thereon as allowed by law, before her

title to the land in controversy should be quieted. This motion was overruled. A motion for new trial was then filed, which was also overruled.

The plaintiff complains of the action of the court in overruling the motion to require Mrs. Woodhouse to compensate him for taxes and penalties paid by him on the land in dispute, together with interest thereon, before her title should be quieted. It was admitted that Mrs. Woodhouse not only held title to the land by a regular and unbroken chain of conveyances from the government of the United States to herself, but that she and her grantors had held the actual, adverse and peaceable possession of the land for more than 15 years before and up to the commencement of this action. The tax deed of Sponable to said land was made June 28, 1866, and filed for record the same day. This action was commenced June 25, 1888. As 22 years had elapsed from the filing of the tax deed before the commencement of this cause, Sponable could not enforce his claim for taxes in any proceeding commenced by him for that purpose. But he claims that, as the action to quiet title is an equitable proceeding, Mrs. Woodhouse's title should not have been quieted until she had done equity by paying to him the taxes he had paid on her land, together with the interest allowed by law thereon.

The reply in the case alleges that the tax deed and all prior proceedings upon which it is based are void. The evidence shows that the sale for taxes was on the 10th day of May, 1864; that the land was purchased by, and tax-sale certificate issued to, W. M. Shean; and also shows that the certificate was transferred by Shean to Sponable, the county treasurer who sold the land, on the 12th day of the same month, and but two days after the tax sale. The assignment does not show how much the treasurer paid therefor. It simply shows that the transfer was made in consideration of ———— dollars and ———— cents. There is nothing to show that Shean sold for a larger sum than he paid, which might indicate a purchase and sale in good faith. In his deposition, wherein he

enumerates what he had paid on the land, which was introduced by him as evidence in the case, Sponable says: "As my recollection is, I paid for the taxes named in the deed, interest and cost of deed, in the treasury of Johnson county, $22." He does not say he paid Shean anything, but says he paid it "in the treasury of Johnson county." That is the gist of the complaint so far as it relates to this point; that is, that he, Sponable, and not Shean, was the purchaser at the tax sale; that Shean was simply used as an instrument through whom Sponable was to procure the tax-sale certificate to the lot. To reinforce or corroborate the theory that Sponable was purchasing land at his own tax sale, other certificates were introduced to show that other pieces of land were sold to Shean and one or two other persons, the certificates for which were all assigned to Sponable on the same day. We think such certificates were properly introduced for such purpose.

The court found for the plaintiff below, that the tax-title was void, and that "J. W. Sponable has no rights, claim, lien or interest in the land in dispute." The court below having held the tax title void, upon the ground that it was based upon a fraudulent tax sale, what rights had Sponable left in connection with such sale? The fraudulent connection with the sale consisted in the fraudulent acts and intention of Sponable. It is agreed that such acts rendered his tax title void. Whatever he paid for such tax title, as well as what he paid in taxes subsequently, was paid by him pursuant to a voluntary act of fraud on his part. Will a court of equity aid him to recover these payments back? We think not. On the other hand, we think that whatever was so paid was forfeited by him to the public, and that he cannot recover it back. Whether, however, the money so paid by Sponable operated to cancel the lien of the county upon the land for the taxes he attempted to pay, or the county still has a lien upon the land for said taxes, we do not undertake to decide. It is sufficient that the courts will not aid Sponable in an attempt to recover from anyone money paid by him pursuant to a fraudulent purpose on his part.

The Iowa cases cited by the plaintiff in error depend for their force upon a statutory provision of that state which "vests in the purchaser (of a tax title) all the right, title, interest and claim of the state and county thereto." Under this action, the Iowa courts hold that, though a tax sale is void as to the owner of the land, it may be held to pass the right and title of the state and county thereto to the purchaser; and as the purchaser thus obtains the lien of the county, he may enforce it though the sale is held void. We have no such statute, and do not think the principle upon which it is based a good one, since it relieves a fraud of the natural penalty of forfeiture which follows it.

It is recommended that the judgment of the district court be affirmed.

By the Court: It is so ordered.

All the Justices concurring.