No. 37,262

SHELL OIL COMPANY, Incorporated, *Appellee,* v. THE BOARD OF COUNTY COMMISSIONERS OF THE COUNTY OF GRANT, H. W. STUBBS and W. P. WESLEY, *Appellants.*

No. 37,263

SHELL OIL COMPANY, Incorporated, *Appellee,* v. THE BOARD OF COUNTY COMMISSIONERS OF THE COUNTY OF GRANT, H. W. STUBBS, W. P. WESLEY and C. L. DEW, *Appellants.*

(197 P. 2d 925)

Opinion filed October 9, 1948.

*W. P. Wesley,* of Ulysses, argued the cause, and *H. W. Stubbs* and *H. B. Maxwell,* both of Ulysses, were with him on the briefs for the appellants.

*Jesse M. Davis,* of Tulsa, Okla., argued the cause, *Kirke W. Dale,* of Arkansas City, *Charles Vance,* of Liberal, and *George W. Cunningham,* of Tulsa, Okla., were with him on the briefs for the appellee.

The opinion of the court was delivered by

WEDELL, J.: Two actions were instituted in the district court of Grant county to vacate and set aside as void two sheriff's deeds issued in a tax foreclosure action brought by the board of county commissioners of Grant county. One purchaser of a mineral interest was a member of the same board of county commissioners that instituted the foreclosure action. The purchaser of the other mineral interest was an attorney employed by the board to assist the county attorney in the tax foreclosure action. Service in that action was by publication.

The defendants in the instant action are the board of county commissioners, W. P. Wesley (county attorney of Grant county) and the two purchasers at the sheriff's sale. The plaintiff is Shell Oil Company, a corporation, formerly Shell Petroleum Corporation, a foreign corporation, authorized to do business in Kansas, with its principal place of business in this state and its postoffice address in the Central Building, Wichita, Kan.

The defendants jointly filed a general demurrer to plaintiff's verified amended petition. Defendants appeal from the order overruling their demurrer. The only material factual difference in the two present actions is the mineral interest involved and the purchasers thereof. The appeals in cases No. 37,262 and No. 37,263 have been consolidated.

The journal entry of judgment, the order of sale and the confirmation of the sheriff's sale in the tax foreclosure action were attached to and made a part of each petition in the instant cases. The petitions are quite lengthy. In our view of the case it is unnecessary to set forth the petitions in full.

We shall continue to refer to the parties as plaintiff and defendants except where necessary to distinguish between the Shell Oil Company and the Shell Petroleum Corporation. In that event we shall refer to the corporation as the oil company or as the petroleum corporation.

Some of the salient facts alleged in the verified amended petition in case No. 37,262, in substance, were: The petroleum corporation

was a defendant in the tax foreclosure action; the journal entry of judgment in that action disclosed the owner and party claiming the mineral interest involved was the petroleum corporation; the oil company, formerly the petroleum corporation, a foreign corporation, was authorized to do business in this state; at all times during its existence in this state petitioner had a service agent appointed in this state, as required by law, upon whom personal service could be had and service could likewise have been had on the secretary of state; the tax foreclosure action was filed on March 19, 1942; the oil company, formerly the petroleum corporation, on that date and for many years prior thereto had been the owner of the undivided mineral interest involved; there were no delinquent taxes on that mineral interest on March 19, 1942; the petitioner had at all times paid the taxes in full; the records of the county treasurer of Grant county disclosed there were no delinquent taxes on "said land" on March 19, 1942; notwithstanding defendants' knowledge that no tax lien existed against "said land" the defendants, W. P. Wesley, county attorney, and H. W. Stubbs, as agents and attorneys for the defendant board of county commissioners, instituted the action seeking to foreclose alleged tax liens; the mineral interest and many other properties were sold on July 26 and 28 and the sales were confirmed August 5, 1942; the alleged unpaid tax on the mineral interest was $3.57; the costs were $4; the market value of the mineral interest on March 19, 1942, was $6,000; the mineral interest was purchased at sheriff's sale for the grossly inadequate and unconscionable sum of $20 by H. W. Stubbs; the county attorney and H. W. Stubbs, as agents and attorneys for the board of county commissioners, instituted the tax foreclosure action for Grant county; in that action the county attorney and H. W. Stubbs acted as governmental agents and representatives of the taxpayers and the general public; although petitioner had a resident agent in this state, as required by law, upon whom personal service might have been had and although personal service likewise might have been had on the secretary of state service was nevertheless obtained by publication only; the publication service was approved by the district court by reason of an affidavit filed by the county attorney in which it was knowingly and falsely stated that personal service could not be had on the petitioner in the instant case in this state; that defendants conspired to fraudulently deprive petitioner of its title to the mineral interest involved; the petitioner had no actual notice of

the foreclosure action and the fraud of defendants until April 1, 1944; until that date this petitioner had relied on its record title, returned the same for taxes each and every year and had paid all taxes assessed against it; had this petitioner had notice of the foreclosure action it could, and would, have shown the court it was the lawful owner of said land free and clear of any alleged tax liens.

It is conceded the allegations in case No. 37,263 were substantially the same except the petition in that case, in substance, further stated: The alleged unpaid tax on that mineral interest was $3.27; the mineral interest was purchased at sheriff's sale by C. L. Dew, a member of the board of county commissioners for the inadequate and unconscionable sum of $10; the market value of "said land" on March 19, 1942, was $6,000.

It is conceded the mineral interest in each of these cases is an interest in real estate and that where the petitions refer to it as "said lands" the property so designated is the mineral interest involved.

The tax foreclosure action was governed by chapter 375, Laws 1941, and all references will be made to it or to sections thereof contained in G. S. 1941 Supplement to the General Statutes of 1935.

Plaintiff, in substance, framed the petitions to vacate and set aside the tax foreclosure judgment and sales on the following theories, to wit: (1) The tax foreclosure act, chapter 375, Laws 1941, under which the mineral interests were sold, does not relate to the sale of real estate on which the taxes are fully paid but only to the sale of real estate on which the taxes are "due and unpaid"; the judgment and sheriff's deeds issued in the foreclosure action are void for the reason the court acquired no jurisdiction of the subject matter; (2) the purchasers at the sheriff's sale, one a member of the board of county commissioners and the other an attorney appointed by that board to assist the county attorney in the foreclosure action, were representatives of the public and in such fiduciary capacity were disqualified purchasers and obtained no title as against this plaintiff; (3) jurisdiction over this plaintiff, if any, was acquired by means of fraud on the district court and this plaintiff and by reason of such fraud the judgment was void; and (4) service by publication was unauthorized as a matter of law and the judgment was void.

We have not attempted to set forth all allegations of the petitions designed to state a cause of action on each theory. Is the first the-

ory sound? In *Magnolia Petroleum Co. v. Moyle,* 162 Kan. 133, 175 P. 2d 133, we held:

"A tax foreclosure action brought under G. S. 1941 Supp., 79-2801, is a proceeding in rem, and jurisdiction of the res is essential to the validity of any judgment in such an action.

"Conditions. precedent to the maintenance of a tax foreclosure action are that taxes lawfully assessed against real estate shall have been unpaid and the real estate involved must have been sold and bid in by the county at a delinquent tax sale, and unless those conditions exist the district court has no jurisdiction of the real estate, and any judgment ordering its sale is void.

"Where an interest in any minerals in any real estate is conveyed as provided in G. S. 1935, 79-420, and the deed is duly recorded or the interest listed for taxation as therein required, and thereafter the mineral interest is separately taxed and the taxes are fully paid, the mineral interest is not subject to sale in any tax foreclosure action. . . ." (Syl. ¶¶ 3, 4, 5.)

Defendants argue these actions, not having been commenced within six months from the date the sales were confirmed, are barred by G. S. 1941 Supp. 79-2804b irrespective of whether the six-month provision allowed for bringing these actions is properly regarded as a statute of limitations or as a condition precedent to the right to maintain them. In the final analysis the force of this contention depends on whether the tax foreclosure act, chapter 375, Laws 1941, of which the six-month statute is a part, relates to the subject of the sale of real estate on which the taxes are fully paid. A careful reconsideration of our former decision in the Magnolia case, *supra,* and of all parts of the 1941 tax foreclosure law convinces us the legislature did not have the remotest intention of legislating on the subject of granting to county officials or to district courts jurisdiction to divest a citizen of his title to real estate on which the taxes were fully paid. That manifestly would be the logical and proper conclusion to; reach even though some ambiguity concerning the question might exist in the act. No such ambiguity can be found in it. On the contrary section 1 of the act (G. S. 1941 Supp. 79-2301) clearly discloses the act applies only to real estate on which the taxes are delinquent. It reads:

"All real estate on which the taxes shall not have been paid . . . shall be subject to sale as hereinafter provided."

G. S. 1941 Supp. 79-2801, which pertains to tax foreclosure actions, reads:

"That in all cases in which real estate has been or shall be sold and bid in by the county at any delinquent tax sale. . . ."

G. S. 1941 Supp. 79-2315 expressly requires "the taxes for which it [the real estate] is sold must be due and unpaid at the time of such sale." The entire act relates only to the collection of delinquent taxes and refers only to real estate on which taxes are due and unpaid.

It is not our purpose to again review at length the various cases cited in the Magnolia case, *supra,* or others which might be considered. We believe, however, brief additional comment concerning a few of them may be helpful. In *Doty v. Bassett,* 44 Kan. 754, 26 Pac. 51, a tax foreclosure statute, similar to the instant one on the precise point now under consideration, was involved. The court interpreted the statute to determine to what subject it related and to what real estate it referred in order to decide whether the court had jurisdiction of the subject matter in the tax foreclosure action. The statute was chapter 39, Laws 1877, the opening sentence of which read:

"That in all cases in which real estate has been or shall be sold and bid in by any city or county *at any delinquent tax sale,* and shall remain or shall have remained unredeemed and the certificate of sale untransferred for the period of three years after such sale, it shall be the duty of the attorney of such city or county to file a petition. . . ." (Our italics.)

To what subject did the court say that act related? It held it was an act "relating to the collection of delinquent taxes." To *what real estate* did it say the act referred? It held it referred to real estate on which "taxes are due and unpaid." Having so interpreted the statute the court applied it, the law, to the property in question, and held:

"Chapter 39, Laws of 1877, relating to the collection of delinquent taxes on real estate bid off by counties and cities at tax sales, is to be understood as referring to real estate where 'taxes are due and unpaid,' and not as including real estate belonging to the United States, and therefore not liable to taxation." (Syl.)

In conformity therewith the court concluded its opinion by saying:

"Here there was no delinquent tax. The district court *therefore* had no jurisdiction." (p. 757.) (Our italics.)

To argue that decision is based on the ground property of the United States was involved is to reason backward. Such argument ignores the interpretation of the statute, the foundation of the decision. The court's lack of jurisdiction, as stated, was due to the fact that there was no delinquent tax. The essence of the decision,

therefore, is not the *reason* why no delinquent tax existed but the *fact* that none existed.

It is quite natural that there has been little occasion to cite the decision in the Doty case. Fortunately, it is seldom that a sovereign endeavors to divest a citizen of his title to property on which he has fully paid the taxes. Errors may occur in the preparation of lengthy tax foreclosure actions. That is quite understandable. When, however, the sovereign's own error is discovered none should be so prompt to rectify it as the sovereign. Ordinarily that is done with the result that such errors seldom reach the courts.

It is well established that the fundamental prerequisite to a valid sale of real property for taxes is that there is a tax due and unpaid at the time of sale. That such tax is due and unpaid "is either specifically or necessarily by implication embodied *in every provision for the sale of real property for taxes*." (Our italics.) That a tax must be due and unpaid has been declared to be a "prerequisite essential to fair dealing between a sovereign and its citizens." (*Montgomery County v. Wilmot*, 114 Kan. 819, 824, 221 Pac. 276.) And that is doubly true where the records of the county treasurer show the taxes are fully paid. It has been well said that where a "sovereign had no charge or claim against the property for taxes" the sovereign had ". . . *nothing* to sell. . ." and that although it went through the form of a sale it ". . . sold *nothing* and hence conveyed *nothing*." (*Montgomery County v. Wilmot*, supra, p. 824.) Manifestly where a purchaser at sheriff's sale received nothing the true owner is not by such sale divested of his title.

It is said the district court in the instant tax foreclosure action was required to determine the *amount* of taxes, charges, penalties and interest chargeable to each tract of land or piece of real estate (G. S. 1941 Supp. 79-2802) and that it did so. To be sure the court was granted the power and it had the duty to determine the *amount* of taxes due on lands when the taxes thereon were delinquent. But to say the court therefore was granted jurisdiction over the sale of lands not subject to sale at all and entirely outside the purview of the act is to confuse exercise of power with lack of jurisdiction.

Defendants emphasize the fact that the journal entry in the tax foreclosure case disclosed the property was sold as property owned and claimed by the petroleum corporation. It is true that where land is sold for taxes the law provides it need not be sold as the

property of any person or persons and that no sale of the real estate shall be considered invalid on account of its having been charged on the tax roll in any other name than that of the rightful owner. (G. S. 1941 Supp. 79-2315.) The difficulty with defendants' contention, however, is that irrespective of who the owner might be the same statute nevertheless expressly provides that "the taxes for which it is sold *must* be due and unpaid at the time of such sale." (Our italics.) This mandatory provision is additional evidence of the legislative intent to make chapter 375, Laws 1941, relate only to the sale of real estate on which the taxes were "due and unpaid" and to no other real estate.

Defendants further contend the petitions do not disclose plaintiff was a proper party to maintain the instant actions. The demurrer, of course, admits the allegations of the petition heretofore stated relative to the oil company's ownership of the property, that the taxes were all paid, that the records of the county treasurer's office so disclosed and that the taxes were also paid each year after the date of sale and until the discovery of the alleged fraud in April, 1944.

It is true that in cases to which chapter 375, Laws 1941, applies the sheriff's deed when filed for record vests in the purchaser or grantee therein named, as against all persons, parties to such proceedings, a fee simple title and the deed is prima facie evidence of the regularity of all proceedings prior to the date of filing it for record. (G. S. 1941 Supp. 79-2804.) There being no taxes due and unpaid the act did not apply. No title passed to the purchaser. The oil company was not made a party to the tax foreclosure proceedings. For the purpose of the demurrer defendants admit the oil company, formerly the petroleum corporation, was and is the owner of the property and that all taxes were fully paid. The petitions disclose a sufficient interest in the plaintiff to enable it to maintain these actions. (*Spicer v. Rowland,* 39 Kan. 740, 744, 18 Pac. 908.) The actions may be maintained on legal or equitable grounds. (G. S. 1941 Supp. 79-2804b.)

It is elementary that the entire matter of taxation, including the levy and collection of taxes, is statutory and does not exist apart from statute. (*Magnolia Petroleum Co. v. Moyle,* supra, p. 139, and cases cited.) Compliance with tax statutes is essential *to acquisition of jurisdiction.* (*Crawford County Comm'rs v. Radley et al.,* 134 Kan. 704, 8 P. 2d 386; *Madigan v. Smith,* 137 Kan. 269, 20 P.

2d 825; *Bryner v. Fernetti,* 141 Kan. 446, 41 P. 2d 712; *Cunningham v. Blythe,* 155 Kan. 689, 691, 127 P. 2d 489.) In the tax foreclosure action presently challenged the county did not comply with the act but on the contrary it went outside the purview of the act and attempted to sell real estate which was not subject to sale and to which the tax foreclosure act did not apply.

The various cases cited by defendants on the points treated have been examined. In view of the basis upon which this decision is founded those cases do not, in our opinion, justify a reversal of the trial court's ruling.

The plaintiff insists the tax foreclosure judgment was also void by reason of each of its three other theories previously noted. The point we have treated is sufficient to affirm the order overruling defendant's demurrer. The opinion is not to be construed as passing on any other contention made by the parties.

The order overruling defendant's demurrer to plaintiff's petitions is affirmed.

WEDELL, J. (concurring): I desire to further state these sales should be declared void on the ground of public policy. A sale of property for taxes by public officers involves more than private interests. It is a matter of public concern. A public officer should not be permitted to be both the seller and the buyer. These characteristics are wholly incompatible.

Entirely aside from any element of actual fraud the only adequate remedy for the mischief involved is to declare public officers unqualified purchasers. There being no sale to a qualified purchaser the sale is void. These principles have long been recognized and applied under varying circumstances. (*Haxton v. Harris, Treasurer,* 19 Kan. 511; *Spicer v. Rowland,* 39 Kan. 740, 18 Pac. 908; *Sponable v. Woodhouse,* 48 Kan. 173, 29 Pac. 394.)

Decisions of other courts are generally to the same effect. A few of them are *Clute et al. v. Barron,* 2 Mich. 192; *Price's Adm'r v. Thompson, Etc.,* 84 Ky. 219; *Chandler v. Mouton et al.,* 33 Vt. 245; *Shrewsbury v. Coal Land Co.,* 78 W. Va. 182, 88 S. E. 1052; *Coughlin v. Holmes,* 53 Wash. 692, 102 Pac. 772; *Michoud et al. v. Girod et al.,* 45 U. S. 503, 11 L. Ed. 1077.

HOCH, J., joins in the foregoing concurring opinion.

Parker, J. (concurring): Because I feel impelled to follow the doctrine of *stare decisis*, and therefore this court's decision in *Magnolia Petroleum Co. v. Moyle,* 162 Kan. 133, 175 P. 2d 133, I concur in the foregoing opinion.

Thiele, J., joins in the foregoing concurring opinion.

Harvey, C. J. (dissenting): From the petitions it is clear that the title to "the land" in question stood of record in the name of the Shell Petroleum Corporation, a corporation. There is no allegation in the petitions that the Shell Petroleum Corporation, a corporation, was authorized to do business in Kansas, or that it had agents upon whom service of summons could be made in the foreclosure action. There is no allegation that as to the Shell Petroleum Corporation the affidavit for publication was defective or inaccurate.

The allegations in the petitions that the Shell Oil Company, Inc., was doing an extensive business in Kansas; that it was the duty of the plaintiff and its attorneys in the foreclosure action to ascertain what interests the Shell Oil Company, Inc., had in the property, and notify it of the action, are untenable. The law imposes no such duty upon them.

If the Shell Oil Company, Inc., had succeeded to the business of the Shell Petroleum Corporation, a corporation, it had a duty to the plaintiff and its attorneys in the mortgage foreclosure action, and to all other persons who might be interested in the property, to have a deed of conveyance or other appropriate instrument filed of record in the office of the register of deeds showing the transfer to it of the interests of the Shell Petroleum Corporation, a corporation. It neglected that duty.

I am in accord with the view that property should not be sold for taxes if the taxes have been paid. Our legislature, by the tax foreclosure statute, has provided a means of ascertaining whether there are taxes due on property. This is in addition to the statutes which pertain to the assessment and levy of taxes. It is the plan of the statute to have everyone in court shown by the record to have any interest or title in the land, and to have a determination as to whether taxes are due. Plaintiff's real contention is that the court erred in making that determination. The statute makes provision for the protection of the owner of the property in such a case in ad-

dition to an appeal. The statute (G. S. 1945 Supp. 79-2804b) fixes a definite time, six months, within which any proceeding may be brought to set aside the judgment. The legislature had authority to make such a limitation. There was a good purpose in its doing so, namely, that purchasers at tax foreclosure sales should know a limitation of time within which the judgment of the court upon which the sale was predicated might be attacked. This action was not brought until three and one-half years later.

It is correctly stated in the opinion that all matters pertaining to the assessment and levy of taxes and the sale of property for the nonpayment of taxes are statutory. These statutes are as binding upon the owner of property subject to taxation as they are upon the taxing officers.

This is a suit in equity in which the petitions disclose that plaintiff was derelict in its duty to give any legally recognized notice to the county or the taxing officials, or others who might be interested in the property, of any interest it had in the property. The petitions further disclose that plaintiff failed to take the benefit of a statute enacted by which it might have cured any defect in the judgment. It seems clear to me that each of the petitions fails to state a cause of action.

I dissent, also, from the concurring opinion of Mr. Justice Wedell, it being my view that the principles of law there stated are not applicable to the facts alleged. In any event, they could affect only the sheriff's sale and order of confirmation and not the judgment in the foreclosure action.