No. 38,249

SHELL OIL COMPANY, Incorporated, *Appellee*, v. BOARD OF COUNTY COMMISSIONERS OF GRANT COUNTY, KANSAS, H. W. STUBBS, W. P. WESLEY and C. L. DEW, *Appellants*.

(231 P. 2d 220)

Opinion filed May 12, 1951.

*Logan N. Green*, of Garden City, argued the cause, and *Roland H. Tate* and *Daniel R. Hopkins*, both of Garden City, were with him on the briefs for the appellants.

*Kirke W. Dale,* of Arkansas City, and *Jesse M. Davis,* of Tulsa, Oklahoma; argued the cause, and *Chas. Vance,* of Liberal, and *Geo. W. Cunningham,* of Tulsa, Oklahoma, were with them on the briefs for the appellee.

The opinion of the court was delivered by

PRICE, J.: This was an action to vacate and set aside a judgment and all subsequent proceedings had in a tax foreclosure action. From a judgment setting aside the sheriff's sale and deed issued pursuant thereto, and quieting plaintiff's title to the property in question upon its compliance with the judgment, the defendant purchaser has appealed.

This is the second appearance in this court of litigation over the validity of the tax foreclosure judgment and sale in controversy. The first appeal was from an order overruling a demurrer to plaintiff's (appellee's) verified amended petition. Our decision affirming that ruling is found in *Shell Oil Co. v. Board of County Comm'rs,* 165 Kan. 642, 197 P. 2d 925. In that appeal two cases were consolidated. The instant appeal is in what was case No. 37,263, in the former appeal, and involves only the sale to C. L. Dew, a member of the Board of County Commissioners. In the interest of brevity the factual background of the matter as alleged in the verified amended petition will not here be set out, but the summary of those allegations, beginning at the bottom of page 643 and ending with the first paragraph commencing on page 645 of our former opinion, is by reference incorporated herein.

The parties will be refererd to as in the court below.

Defendant Dew's answer admits that at all times during the tax foreclosure action he was a duly elected and acting member of the Board of County Commissioners of Grant County; that he, together with other members of the Board, authorized and directed the county attorney to institute a tax foreclosure suit, and further authorized the employment of an outside attorney to assist in such procedure. He specifically denies he had prior knowledge that no tax lien existed against the property in question, and further alleges that in truth and in fact a valid tax lien at such time did exist. The answer further denies that he unlawfully, intentionally, wrongfully or fraudulently undertook to deprive plaintiff of the property, or that he practiced any fraud upon plaintiff or upon the court to procure a decree of foreclosure in the action, but, on the contrary, alleges that he acted in good faith in an effort to discharge his duties as a public officer, and that all of his acts, both individually and

as a public officer, were carried out and discharged in good faith. The answer then admits that he bid in the property in question at the sheriff's sale, as alleged by the plaintiff, but alleges he was interested in the property by reason of the fact he was the owner in fee of the surface and one-half of the mineral rights; that he bid in such property at a regularly conducted sheriff's sale, under competitive bidding; that he was the highest bidder therefor, and that all proceedings in connection with such foreclosure action, from its commencement down to and including the sale to him, were regular and in conformity with law, and were carried out in good faith by defendant and all parties concerned. The answer further alleges that plaintiff's cause of action, if it has any, is barred by the statute of limitations.

The cause proceeded to trial by the court. Oral testimony, if any was introduced, is not abstracted. The court made conclusions of fact and of law. Included in the former is a finding that taxes in the amount of $1.77, for the year 1932, had become delinquent when the property in question was standing in the name of one Long, plaintiff's grantor; that it had been bid in by Grant County and was entered on the delinquent tax sale records, and there carried until 1942, when it was foreclosed; that plaintiff was served by publication notice only, but, as a foreign corporation, could have been served through the secretary of state; that judgment was rendered June 9, 1942, finding the taxes on the undivided one-half mineral interest in question to be delinquent and unpaid in the amount of $3.27, and foreclosure of such tax lien was ordered. The court then made a finding that the property in question was sold by the sheriff of Grant County to defendant Dew for the amount of $10.00, and that such sale was confirmed and sheriff's deed issued to him.

The court further found:

"That C. L. Dew, the purchaser of said mineral interest in Case No. 1655, was duly elected as a member of the Board of County Commissioners of Grant County, Kansas, and qualified for such office in 1941, and was a member of said Board at the time the proceedings were instituted in Case No. 1655, at the time judgment was rendered, and at the time of the sheriff's sale therein."

The conclusions of law were that plaintiff was a proper party plaintiff in this action; that the taxes for 1932 on the undivided one-half mineral interest in the property involved were properly assessed, were delinquent and were subject to foreclosure; that the

service by publication notice in the tax foreclosure action was valid, and that the judgment foreclosing the tax lien on the property in question was valid.

The court then rendered the following conclusion of law:

"V.

"C. L. Dew, by reason of being a member of the Board of County Commissioners of Grant County, Kansas; during the pendency of Case No. 1655, and at the time of the sheriff's sale therein, was not an eligible purchaser, and the sale to him was void. The sale and sheriff's deed issued to C. L. Dew are hereby set aside."

Pursuant to its conclusions of fact and of law the court rendered judgment barring and excluding defendants from all right, title and interest in the property in controversy, and further decreed:

". . . that the title of plaintiff to said real property be, and is hereby, quieted and confirmed except for the lien of the certain judgment heretofore rendered in case No. 1655 in this court, entitled Board of Commissioners of Grant County, Kansas vs. George S. Howell, et al., in the sum of $3.27 with interest at the rate of 10% per annum from June 9, 1942, and costs in the sum of $4.00; and that the plaintiff, upon payment of said judgment in said action be, and is hereby adjudged to be the owner of the real property heretofore described in fee simple, free of all rights, claims, or liens."

Defendant Dew's motion for new trial, alleging erroneous rulings and conclusions of law by the court and that the judgment is contrary to law, being overruled, he has appealed, specifying as error the making of conclusion of law number V, above quoted, the rendition of judgment in favor of plaintiff, and in overruling his motion for new trial.

At the outset we are confronted with plaintiff's motion to dismiss the appeal, based on the following facts:

The journal entry of judgment recites that the Board of County Commissioners of Grant County, as such, appeared and participated in the trial. That body was adjudged to have a lien on the property involved. In other words, the earlier judgment, foreclosing the tax lien, was upheld—only the sale and deed to Dew being held void and set aside. He is the only defendant who appealed and his notice of appeal is directed only to plaintiff and its attorneys of record. Our appeal statute (G. S. 1949, 60-3306) provides that:

". . . A copy of such notice must be personally served on all adverse parties whose rights are sought to be affected by the appeal, and who appeared and took part in the trial, or their attorneys of record; . . ."

and plaintiff contends the Board of County Commissioners is therefore a necessary party to the appeal, the argument being that if Dew

should prevail the lien decreed in favor of the Board would necessarily be extinguished—thus its rights would be "affected" within the meaning of the statute, and we are cited to language contained in *Grant v. Reed*, 163 Kan. 105, 179 P. 2d 945, where it was said:

"We have often held that where a judgment against several defendants is brought to this court for appellate review and it appears that a modification or reversal of the judgment will affect a defendant who has not been made a party the appeal will be dismissed." (p. 106.)

That isolated sentence, however, must be read in connection with other statements contained in the opinion and from them it is clear that our holding there is to be construed as meaning that notice of appeal must be served on those parties to the litigation to whose interest it is that the judgment of the lower court be upheld and who are interested in opposing the relief sought by the appellant. See *Protzman v. Palmer*, 155 Kan. 240, 124 P. 2d 455; and *In re Estate of Weaver*, 170 Kan. 321, 224 P. 2d 1004, where it was held:

"Where—as here—a judgment is brought to this court for appellate review and it appears that a modification or reversal of such judgment will adversely affect a litigant who has not been made a party the rule that the appeal must be dismissed is well established" (citing cases). (p. 325.)

Narrowed down to what actually is sought in this appeal it is clear that defendant Dew seeks to reverse the judgment which decreed the sale and deed to him to be void. If he should prevail the county still has the money representing the amount of delinquent taxes, interest and costs paid by him at the sheriff's sale, but its lien would be extinquished. If the judgment is affirmed the county still has its judgment lien subject to its being extinguished by payment to the county by plaintiff of the amount of delinquent taxes, interest and costs, as provided in the judgment. Thus it would seem that in either event the result, as far as the county is concerned, would be the same. The facts here are not to be confused with those in *Cowley County Comm'rs v. Herbert*, 163 Kan. 590, 185 P. 2d 153, also relied on by plaintiff, where the attempted appeal was from an order sustaining a demurrer to a motion filed by the appellant to vacate and set aside a judgment, order of sale, confirmation thereof, and a sheriff's deed in a tax foreclosure proceeding, and where no notice of appeal was served on the Board of County Commissioners. Obviously, in that case it was to the interest of the county that the foreclosure *judgment* be upheld.

Without further discussion of the matter we hold it has not been

made clearly to appear that a modification or reversal of the judgment appealed from will adversely affect the interests of the county, and the motion to dismiss the appeal is therefore denied.

This brings us to the first of two principal questions involved in this case—is a county commissioner, in his private and individual capacity, an eligible purchaser at a sheriff's sale in a tax foreclosure action brought by the Board of County Commissioners of which he, during all stages of the proceedings, was a member? We are aware that in view of our ultimate holding an answer to this question is not necessarily essential to what we consider to be a correct disposition of this appeal. However, in the interest of sound public policy and for the benefit of bench and bar generally, we think the question should be answered.

The position of defendant (appellant) is that he joined with the other members of the Board under the appropriate statute (G. S. 1941 Supp. 79-2801 to 2809) in directing the county attorney to bring the tax foreclosure action against the owners of all real estate which had been sold at delinquent tax sales and which remained unredeemed for a period of three years after such sales; that the statute was mandatory; that after the action was instituted all subsequent proceedings were judicial in nature and he and other members of the Board had no further connection with the matter; that the sale here was conducted by the sheriff under competitive bidding, as provided by law; that he was the highest bidder; the sale to him was confirmed and deed issued; and that the whole proceeding, from beginning to end, was free from fraud and any wrongdoing.

He also directs our attention to the fact the legislature, by specific enactment, has declared who shall be disqualified to purchase at a judicial sale, and cites G. S. 1949, 60-3419, a portion of which reads:

". . . No sheriff or other officer making the sale of property, either personal or real, nor any appraiser of such property, shall either directly or indirectly purchase the same; and every purchase so made shall be considered fraudulent and void."

In support of the judgment of the lower court plaintiff contends the principle involved is one of public policy, and invokes the well-established and often repeated maxims—that no man can serve two masters; no agent can serve two principals; that a trustee or other person occupying a fiducial relationship cannot traffic in the trust estate; that every public official should scrupulously avoid placing himself in a position where his integrity and honesty can be drawn

into question—and cites a number of our early decisions which prohibit a county treasurer from purchasing, directly or indirectly, any land sold by him at a tax sale (*Spicer v. Rowland,* 39 Kan. 740, 18 Pac. 908; *Sponable v. Woodhouse,* 48 Kan. 173, 29 Pac. 394) as being indicative of this court's attitude on the general subject matter.

In examining this question we recognize that in directing the county attorney to bring the tax foreclosure action the Board of County Commissioners of Grant County was merely performing a ministerial duty imposed upon it by statute (G. S. 1941 Supp. 79-2801). We are also aware that by Ch. 362, Laws of 1945, the statute was amended so that the bringing of a tax foreclosure action where the real estate involved is a mineral interest in land which has been severed from the fee, as here, is within the discretion of the Board. However, that subsequent amendment is not necessarily persuasive in our decision on the merits of this case, all proceedings in which were had prior to its enactment.

Little benefit would result from a discussion of such precedents as are cited by counsel for either side, and neither have we found any precisely similar. What is similar in all, though, is the animating principle of fair and honest dealing on the part of those who, by virtue of their positions, have it within their power to acquire interests where they have a duty to perform in a manner inconsistent with such private interests.

We are convinced the conclusion of the lower court that defendant was not an eligible purchaser was eminently correct, if for no other reason than upon grounds of sound public policy. In so holding we do not mean to infer the transactions under review were fraudulent in fact. The law and ethics of a situation such as this should not rest upon the principle of actual fraud, but are founded on the theory that fraud in such cases is best prevented by removing all temptation. In other words, the rule rests on prevention of fraud and is based upon the moral obligation of everyone, and particularly a public official, to refrain from placing himself in a position which ordinarily creates or excites a conflict between self-interest and integrity. We think it is better that the danger and cause of the evil should be prohibited in all cases than that courts should be relied upon to apply the remedy by inquiring into the facts of a particular case to ascertain whether there has been fraud in fact. Fullness of price, absence of fraud, and fairness of purchase, are not sufficient to overcome this rule of policy. Entirely aside

from any element of actual fraud, the only adequate remedy is .to declare one occupying the position of defendant an ineligible purchaser at such a sale. On this broad general principle the language of the late Justice Cardozo, when Chief Judge of the New York Court of Appeals, seems very appropriate:

". . . Many forms of conduct permissible in a workaday world for those acting at arm's length are forbidden to those bound by fiduciary ties. A trustee is held to something stricter than the morals of the market place. Not honesty alone, but the punctilio of an honor the most sensitive, is then the standard of behavior. As to this there has developed a tradition that is unbending and inveterate. Uncompromising rigidity has been the attitude of courts of equity when petitioned to undermine the rule of undivided loyalty by the 'disintegrating erosion' of particular exceptions. . . . Only thus has the level of conduct for fiduciaries been kept at a level higher than that trodden by the crowd. It will not consciously be lowered by any judgment of this court." (*Meinhard v. Salmon*, 249 N. Y. 458, 164 N. E. 545, 62 A. L. R. 1.)

So far as this particular phase of the case is concerned we agree with the trial court's conclusion—one in the position of defendant was an ineligible purchaser at the sheriff's sale.

And this brings us to the all-important question relating to the finality of tax foreclosure proceedings, including the sale, confirmation thereof and sheriff's deed. Here the tax foreclosure judgment was rendered in June, sale was made in July, and the sale was confirmed and deed issued in August, all in the year 1942. This action to vacate and set aside was not commenced until January, 1946, about three and one-half years later. Defendant contends that even though it should be held he was not an eligible purchaser, nevertheless, plaintiff's action, not being commenced within six months after the confirmation of the sale, was brought too late, and he relies upon the provisions of G. S. 1941 Supp. 79-2804b (that being the statute in force at the time of the tax foreclosure proceedings in question), which read:

"Legal or equitable actions or proceedings may be brought to open, vacate, modify or set aside any judgment rendered for taxes, interest and costs or any order of sale made under the provisions of section 19 [79-2803] hereof, or any sale made under the provisions of section 20 [79-2804] hereof but every such action or proceeding, including those brought on the grounds and in the manner prescribed by the code of civil procedure, must be commenced within six months after the date of the sale of the real estate, which was affected by such judgment, order of sale or sale, was confirmed by the court. The provisions of this section shall apply to all judgments, orders of sale, and sales whether the purchaser at the foreclosure sale be the county or an individual."

Plaintiff's position is that defendant's title is dependent upon two things—first, a valid sale, and second, a valid deed; that here, there being no competent bidder, there was no sale, hence no deed; that the statute offers no protection to one claiming under a void sale or a void deed, and that they may be attacked at any time.

The precise question was not in issue when this case was previously before us (165 Kan. 642, 197 P. 2d 925, *supra*). The question there was the correctness of an order overruling a demurrer to the verified amended petition which alleged there were in fact no delinquent taxes against the property which had been foreclosed. We affirmed the lower court, the basis of our decision being that under such circumstances, that is, where no taxes were delinquent, the court would acquire no jurisdiction over the property in the tax foreclosure action, the county would have nothing to sell, and therefore nothing would be conveyed to the purchaser. Putting it another way, the holding in that decision was that the tax foreclosure act (G. S. 1941 Supp. 79-2801 to 2809) simply had no application to property upon which all taxes levied were fully paid.

Here, however, we have a different situation. The court found that taxes for the year 1932 were delinquent and that the property in question had been bid in by the county and carried on the delinquent tax sale records. The court therefore had jurisdiction to render its judgment in the tax foreclosure action in 1942. In other words, the provisions of the tax foreclosure act applied to those proceedings.

Despite our holding that defendant was not an eligible purchaser at the sheriff's sale, and irrespective of whether the sale, confirmation thereof and the deed be considered void or merely voidable—we are of the opinion plaintiff's action was brought too late. Considering the confirmation of the sale to be an absolutely void "judgment," it may be argued that under the provisions of G. S. 1949, 60-3009, it could be vacated at any time on motion of a party or any person affected thereby. On the other hand, reference is made to G. S. 1949, 60-303, which provides:

"Civil actions can only be commenced within the periods prescribed in this article, after the cause of action shall have accrued; but where, in special cases, a different limitation is prescribed by statute, the action shall be governed by such limitation."

Under G. S. 1941 Supp. 79-2804b, every action, either legal or equitable, to open, vacate, modify or set aside any judgment ren-

dered for taxes, or any order of sale made thereunder, including those actions brought on the grounds and in the manner prescribed by the code of civil procedure, must be commenced within six months after the date of confirmation of sale, and the provisions of this section apply to all judgments, orders of sale and sales, whether the purchaser be the county or an individual. We think the clear intention of the statute is to supersede any and all other provisions of the code insofar as they may relate to actions to vacate, modify or set aside judgments, orders of sale and sales in tax foreclosure proceedings. The statute fixes a definite time within which such an action may be brought. The legislature had authority to make such a limitation and there was a good purpose in its doing so, namely, that purchasers at tax foreclosure sales would know a limitation of time within which the proceedings might be attacked. To hold otherwise would merely introduce confusion and unsettle every title growing out of a tax foreclosure action. Every title examiner would pause when confronted with a title derived from tax foreclosure proceedings, notwithstanding the statute (G. S. 1941 Supp. 79-2804) states the deed shall convey a fee simple title. Purchasers at tax foreclosure sales could never be certain whether they were purchasing fee simple titles or prospective lawsuits. We think the legislature clearly intended to remove, after the passage of the time prescribed by the statute, the uncertainty which has been conceded by everyone to exist with reference to tax titles.

In passing, we note that the statute under consideration as it now appears (G. S. 1949, 79-2804b) has been amended in that it now provides that such actions to vacate, modify or set aside, must be commenced within twelve months after the date of confirmation of sale, and that other language in the section, as amended, is even a stronger indication of the legislative intent to place a stamp of finality on tax foreclosure proceedings after the expiration of the time prescribed.

See also *Blair v. Pooler,* 160 Kan. 201, 204, 160 P. 2d 672; *Sheridan County Comm'rs v. Acre,* 160 Kan. 278, 287, 160 P 2d 250; and *Board of County Comm'rs v. Groomer,* 166 Kan. 593, 598, 203 P. 2d 237.

In conclusion, and by way of summary—we hold that on account of the facts as hereinbefore related, defendant Dew was an ineligible purchaser at the sheriff's sale. However, taxes lawfully levied for the year 1932 being delinquent, the provisions of the tax

foreclosure act (G. S. 1941 Supp. 79-2801 to 2809) applied to the entire foreclosure proceeding. Included in the act is 2804b, the provisions of which have been discussed in detail. The instant action to vacate and set aside, not being commenced within six months from the date of confirmation of the sale, was brought too late.

It therefore follows that the judgment of the lower court is reversed with directions to enter judgment in favor of defendant Dew.

SMITH, J., dissents from that part of paragraph 2 of the syllabus and the corresponding portion of the opinion which hold that the action was brought too late.