59 So.2d 647 (1952)
INDIAN ROCKS BEACH SOUTH SHORE, Inc.
v.
EWELL et ux.
Supreme Court of Florida, Special Division A.
June 13, 1952.
Rehearing Denied July 7, 1952.
*648 Ralph Richards, Charles M. Phillips, Jr., and William E. Nodine, Clearwater, for appellant.
Thompson & Cooper, Clearwater, for appellee.
MATHEWS, Justice.
This suit arose out of a dispute concerning the dedication and acceptance of a public street.
A plat of a piece of property outside of the corporate limits of any municipality in Pinellas County was filed for record on September 4, 1915, and recorded in Plat Book 4, page 20. The plat contained the following dedication:
"The fee in the streets and alleys is herein and hereby reserved in the Indian Rocks Realty Company, a corporation, and an easement is given to the County of Pinellas for public highways only; expressly reserving and retaining in the said corporation all rights to use any of said streets for street cars, electric lights, railroad, telegraph, water, gas, dock and bath house purposes forever. The riparian rights at the foot of all streets are expressly reserved in said corporation."
The property in question was an island in Pinellas County that was bounded on the West by the Gulf of Mexico and on the East by a bay. The plat showed a main street running North and South for the entire length of the subdivision. It showed a number of cross-streets designed to give access to the Gulf on one side of the island and the Bay on the other side. The street involved here was named "Bay Place" and runs East from Pass Avenue to the Bay. Pass Avenue is the main street shown on the plat and is now known as Gulf Boulevard. Soon after the plat was filed in 1915, Pinellas County opened Pass Avenue and paved it. It is now a part of the main highway along the Gulf beaches of Pinellas County.
*649 At the time Pass Avenue was opened and paved, the cross-streets, or side streets, were not opened and paved. There were no dwellings at that time in this subdivision. There were no fences or enclosures and anyone traveling along Pass Avenue could go to the Bay or Gulf as he desired.
In the course of time the beaches in Pinellas County, including this property, were gradually developed and homes or cottages were built. As this development and improvement of property progressed some of the side streets or cross-streets shown on the plat came into use.
As soon as appellant was incorporated in 1949, it passed an ordinance formally accepting the dedication of all streets and alleys within the corporate limits. Immediately thereafter the town began to improve the streets shown upon the plat above mentioned. It employed a surveyor to locate corners and install markers. When this surveying began, the suit was filed by the appellees. It was a suit in the nature of a bill to quiet title and for an injunction against the appellant. The appellees claimed that they owned the lots immediately adjoining "Bay Place" and also owned "Bay Place", including the easement, and they sought an injunction against the town from opening and improving "Bay Place" as a public street. After motions to dismiss and other pleadings were filed and disposed of, the cause went to trial on the complaint and an amended answer. A final decree was entered granting the relief prayed for and enjoining appellant from opening and improving "Bay Place" as a highway or street.
It was stipulated by the parties at the time of the trial that "Bay Place" had never been carried on the tax rolls of Pinellas County.
The appellees claimed that they owned "Bay Place" by reason of various conveyances originating with the original subdivider. The chain of title under which the appellees claimed is shown by the stipulation between the parties as follows:
"For the purpose of simplifying the issues of fact to be tried in this cause, it is stipulated by and between the undersigned counsel for the plaintiffs and defendant as follows:
"1. That W.C. Wells and his wife, Maude O. Wells were grantees named in a certain deed in which D.L. Evans and wife, Mary M. Evans, were the grantors, said deed dated the 21st day of May 1937, recorded in Deed Book 775, at page 319, public records of Pinellas County, Florida, whereby the grantors conveyed to the grantees the following described real estate:
"`Lots one (1) and Two (2) Block Six (6) Indian Rocks South Shore Subdivision Sections 24 and 19 Township 30 South Ranges 14 and 15 East, according to map or plat thereof as recorded in plat book 4 page 20 public records of Pinellas County, Florida, together with the land and riparian rights appertaining thereto, lying between the Easterly lines of the said lots hereby conveyed, the Westerly lines of the United States Government Channel in fractional Sections 19 and 24 Township 30 South Ranges 14 and 15 East.'
"2. That W.C. Wells and his wife were the grantees named in a certain deed in which Dew Smith, Inc. was the grantor, said deed dated the 11th day of January 1938, recorded in Deed Book 791, at page 137, public records aforesaid, whereby the grantors conveyed to the grantees the following described real property located in Pinellas County, Florida:
"`Lots 39 and 42 Block 4 Indian Rock South Shore Subdivision according to the map or plat on record in the Clerk's office of Pinellas County, State of Florida, Plat Book 4, page 20.'
"3. That W.C. Wells and wife were the grantees in a certain deed in which the Pinellas County Title Company was the grantor, said deed dated the 19th day of January, 1938, recorded in Deed Book 791, page 139, public *650 records of Pinellas County, Florida, whereby the grantors conveyed to the grantees the following described real property:
"`Beginning at the Northwest corner of Block Six (6) according to the plat of Indian Rock South Shore, as recorded in Plat Book 4 on page 20, of the public records of Pinellas County, Florida; and running thence East along the North line of said Block 6, and the Easterly projection of said North line, to the channel in "The Narrows"; thence Northwesterly along said channel to intersection with an Easterly projection of the South line of Lot forty-two (42) in Block Four (4) of said subdivision; thence West along this Easterly projection, and the South line of said Lot 42 in Block 4, to the East line of Pass Avenue; thence Southeasterly in a straight line to the point of beginning. The said plot including the area shown on the above mentioned plat as "Bay Place"'.
"4. That the plaintiffs, J.L. Ewell and Myrtle Ewell are the grantees named in a certain deed in which W.C. Wells, a widower, was the grantor, said deed dated the 27th day of July, 1944, recorded in Deed Book 981 at page 117, public records aforesaid, purporting to convey to the said grantees the following described real estate located in Pinellas County, Florida:
"`Lot Thirty-nine (39) and Lots Forty-two (42) to Forty-eight (48) inclusive, in Block Four (4); and Lots One (1) and Two (2) in Block Six (6) of Indian Rock South Shore, according to the plat of said subdivision recorded in plat book four (4) on page twenty (20) of the public records of Pinellas County, Florida. Together with all submerged lands and riparian rights appurtenant thereto. Also the area including "Bay Place" as shown on said plat, more particularly described as follows: Beginning at the Northwest corner of said Block Six (6) and running thence East along its North boundary, and an Easterly projection thereof, to the Channel in "The Narrows" thence Northwesterly along said channel to intersection with the Easterly projection of the South Boundary of Lot Forty-Two (42) in said Block Four (4) thence West along this Easterly projection, and the said South boundary of Lot 42 to the East line of Pass Avenue thence Southeasterly in a straight line to the point of beginning.'
"5. That Pinellas County Title Company was a grantee in a certain deed from Indian Rocks Realty Company, a corporation, said deed dated December 4th, 1937 recorded in Deed Book 786, page 313, public records aforesaid, purporting to convey to the Pinellas County Title Company the following described real estate located in Pinellas County, Florida:
"`All land, riparian rights, franchises, easements or any other interest, right or privilege of whatsoever nature unconveyed of record at the date of this instrument by the party of the first part in Government Lots One (1) and Two (2) of Section 24 Township 30 South Range 14 East; and in Government Lot One (1) of Section Nineteen (19) of Township Thirty (30) South Range Fifteen (15) East.
"`Particularly conveying riparian rights and submerged lands abutting all streets or other thoroughfares as shown on the plat of Indian Rock South Shore as this plat appears of record in Plat Book 4 on page 20 of the public records of Pinellas County, Florida.'
"That Bay Place had not theretofore been conveyed or encumbered except as may have been effected by the purported dedication appearing on the Plat.
"6. That the defendant consents to the amendment of the first two lines of paragraph VI of plaintiff's complaint, commencing with the beginning of paragraph VI and continuing to the word `commenced' in line 3, to read as follows:
"`As stated in paragraph V, supra, the said W.C. Wells and wife entered *651 into possession of the real estate described in paragraph V, and on or shortly after January 22, 1938.'
"7. The defendant admits that the plaintiffs are the owners of Lots 39 and 42 of Block 4, and Lots 1 and 2, of Block 6 according to Plat Book 4, page 20, Pinellas County Records.
"8. That Indian Rocks Realty Company on September 4th, 1915, was the owner of said Lots 39 and 42 of Block 4, Lots 1 and 2 of Block 6, and `Bay Place' located between Lot 42 of Block 4 and Lot 1 of Block 6; that it had, at that time, the right to convey the same by deed, to mortgage the same by deed or mortgage and to offer to dedicate to the public such portions thereof as it saw fit to do, and that both parties herein claim under said Indian Rocks Realty Company."
In addition to their claim of ownership and the right to possession of "Bay Place" under deeds shown in the stipulation, the appellees also claimed ownership and the right to possession by a claim of adverse possession. They further claimed that the municipality was estopped to assert any right to open "Bay Place" as a public street or thoroughfare.
The appellant contends that the filing and recording of the plat was an absolute and unconditional offer of the owner of the property to dedicate the streets, roads, highways and public ways shown on the plat to the public for public use, and that the same was accepted by Pinellas County when it opened up and paved or hard-surfaced Pass Avenue, and also opened up, or exercised control over, some of the side streets leading to the Gulf and to the Bay, prior to any revocation or attempted revocation. It was also claimed that other side streets, including "Bay Place" were used by the public, prior to any attempted revocation. The municipality when incorporated and organized became vested with all of the rights, powers and authority of the County of Pinellas with reference to the roads, streets, highways and public ways shown on the said plat. If the county had no rights in the platted streets, the town obtained none.
The real important question in this case is the contention of the municipality that by accepting and improving some of the streets or roads (and especially the main road, "Pass Avenue"), shown on the plat prior to revocation there was an acceptance of all of such streets, etc., shown on said plat by Pinellas County or the public by user. This question is stated by the appellant as follows:
"Where a recorded plat shows a number of public streets with a dedication to the county of these streets for use as public highways, and the evidence shows that the county has accepted by user the majority of streets as shown on the plat, including the main street, and has evinced no intention of refusing to accept any of them, will the county be deemed to have accepted the proffered dedication of all of the streets as shown on the plat?"
There is no Florida case directly in point on this question. The case of Kirkland v. City of Tampa, 75 Fla. 271, 78 So. 17, 22, although not directly in point, is helpful. Certain cardinal principles were well established in that case. As far as the public is concerned, the filing and the recording of a plat amounts to an offer of dedication which must be accepted before there is a revocation in order to complete the dedication. The acceptance by the public must be before there is a withdrawal of the offer of dedication. In that case the Court further held:
"The propriety of the decree in this case rests solely upon the fact as disclosed by the proofs that there had been no revocation clearly and definitely shown on the part of both Kirkland and De Bona of the offer to dedicate the strip of land to public use for a street. So far as Kirkland's acts were concerned, they may have been sufficient to show an intention on his part to revoke the offer, but, as we have shown, De Bona has the right to insist upon the passageway; and, although that is a private right which the city may not enforce in its name, yet until that right is waived by some act on his part clearly showing an abandonment *652 of it and an intention to shut the public off from an acceptance of the offer to dedicate the strip of land, the public may, within a reasonable time, accept the offer and open the passageway."
It, therefore, becomes important to determine if there was any withdrawal of the offer to dedicate the roads or streets shown upon the recorded plat by anyone having the authority to withdraw such offer before acceptance by the County or the public, and also, if acceptance of a part of the roads and streets before revocation constitutes an acceptance of all of such roads and streets.
Some question has been raised as to the meaning of the words "Bay Place" as shown upon the plat and if it was intended by the original owner that "Bay Place" was to be a street. In the case of Burns v. McDaniel, 104 Fla. 526, 140 So. 314, 316, this Court definitely settled this question when it held:
"While the word `street' would not include a mere private way, it does include all the public roads or ways within the municipality over which it has jurisdiction and as to which it owes the public the duty of exercising reasonable care to keep and maintain them in a reasonably safe condition for public use. The word `place' has several meanings. In its primary and most general sense it means locality, situation or site, and it is also often used to designate an occupied situation or building or an estate. The third definition given by the Standard Dictionary is: `An open space or square in a city; also, a court or street; especially a short or subordinate street, as a market place, Astor place, etc.' It is in this last sense the word `place' is used in the amended declaration. The word `place' means simply a particular kind of street, but it is included within the generic term `street.'"
There can be no doubt that the dedicator intended "Bay Place" to be a public street. The plat shows very definitely distinct lines bordering "Bay Place" and running from Pass Avenue to a meander line bordering what is shown to be "The Narrows", which is some distance from the channel of the bay as shown on the plat. "Bay Place" is bounded on one side by Lot 42 and on the other side by Lot 1. Any engineer or surveyor could definitely locate the corners of "Bay Place". The plat shows very clearly that it was the intention of the dedicator that "Bay Place" be bounded by Pass Avenue on one side and the meander line of the Narrows on the other side, just as he intended that Lots 1 and 42 should be so bounded.
The weight of authority seems to be that acceptance of some of the streets of a platted subdivision shall be considered as acceptance of all of the streets. In American Jurisprudence, Sec. 38, page 387, on the question of Dedication, the author states:
"An acceptance by a city or village of some of the streets and alleys appearing on a plat, however, is an acceptance of the entire system of streets and alleys so appearing unless the intention to limit the acceptance is shown."
The leading case and one of the best reasoned cases on this subject is that of Village of Lee v. Harris, 206 Ill. 428, 69 N.E. 230, 232, 99 Am.St.Rep. 176, in which the Supreme Court of Illinois said:
"It was abundantly proven, and, as we understand it, was not disputed, that the village accepted a number of the streets and alleys in both the original village and the addition thereto, and opened the same up to public use, and maintained the same, for the use of the public, as streets and alleys of the village. But it is insisted that an acceptance of some of the streets and alleys of a plat does not constitute an acceptance of the whole, and that proof of the acceptance of a part is not sufficient to vest the village with right to the use, possession, and control of all the streets and alleys shown on a plat. We do not so understand the law, but, on the contrary, hold the true rule and doctrine to be that an acceptance by a *653 city or village of some of the streets and alleys appearing on a plat is an acceptance of the entire system of streets and alleys so appearing, unless the intention to limit the acceptance is shown. * * * There is no proof in this record that the village declined to accept any portion of either plat, and, that being true, the acceptance of a part was an acceptance of the whole plat."
This same doctrine was followed by the Supreme Court of Illinois in other cases. Kimball v. City of Chicago, 253 Ill. 105, 97 N.E. 257; Consumers Company v. City of Chicago, 268 Ill. 113, 108 N.E. 1016.
This rule has been adopted in Tennessee in the case of Doyle v. City of Chattanooga, 128 Tenn. 433, 161 S.W. 997; and in Pennsylvania in the case of City of Easton v. Koch, 152 Pa.Super. 327, 31 A.2d 747. See also, Ramstad v. Carr, 31 N.D. 504, 154 N.W. 195, L.R.A. 1916B, 1160; Attorney General v. Tarr, 148 Mass. 309, 19 N.E. 358, 2 L.R.A. 87; London & San Francisco Bank v. Oakland, 9 Cir., 90 F. 691, 33 C.C.A. 237.
In the case of Hall v. Breyfogle, 162 Ind. 494, 70 N.E. 883, 885, the Court held:
"Acceptance by the public of a dedication may be manifested by some formal act of the public authorities, or implied from the latter's improving or repairing the same, or from any other act with respect to the subject matter that clearly indicates an assumption of jurisdiction and dominion over the same. * * * And the failure of a municipal corporation to open and improve part of a new street does not operate as a rejection of the part not opened or improved. * * * The dedication having been accepted by the town of Crown Point on behalf of the public by assuming jurisdiction and acts of dominion over it, it may proceed with the occupation and use as public convenience requires. `Whenever a new town (or addition) is laid out, it is not expected that all the streets and parks will be needed by the public at once. Acceptance by use and improvement whenever the growth of the town demands it will be sufficient'."
In the case of Heitz v. City of St. Louis, 110 Mo. 618, 19 S.W. 735, 736, the facts showed that some of the streets shown upon the plat covered ground which could not be traveled without making radical changes. The main street, known as Dorcas Street, had been improved and opened. The Court held that the acceptance of this main street implied an acceptance of the whole and said:
"The fact that a portion of that street, owing to the nature of the ground, was not capable of being traveled, militates nothing against the idea of acceptance by the public and user by the public. Besides, the city, by accepting, building, and using Dorcas street as platted, must be regarded as accepting the whole tract platted, and not as barely accepting such portion of the platted district as the city chose to improve, and did improve."
This case was followed by another case from Missouri to the same effect. Town of Otterville v. Beute, 240 Mo. 291, 144 S.W. 822.
In the case of Gable v. City of Cedar Rapids, 150 Iowa 108, 129 N.W. 737, 739, the Court held:
"The contention of the appellees that the plat was never accepted by the city cannot be sustained. It is true there is no record of a formal acceptance of the streets and alleys by ordinance or resolution, but that was not necessary. The city had improved most of the streets on the plat under consideration by grading and paving and by using them for water and sewer pipes, and such acts constitute a sufficient acceptance. * * * The fact that a part of the street has not been improved or used is of no consequence, if it appears that it has not been heretofore needed. * * * And, where a city has used or improved a part of a street, it will be presumed that it has accepted the entire street."
See also Chafee v. City of Aiken, 57 S.C. 507, 35 S.E. 800; Phillips v. City of Stamford, *654 81 Conn. 408, 71 A. 361, 22 L.R.A., N.S., 1114; Reinhardt v. Chalfant, 12 Del. Ch. 214, 110 A. 663; Taraldson v. Town of Lime Springs, 92 Iowa 187, 60 N.W. 658; Olsen v. Village of Grand Beach, 282 Mich. 364, 276 N.W. 481.
It is impossible for a municipality to improve all streets shown on a plat as soon as the plat is recorded. Many people own wild and uncultivated land without any buildings on it. They conceive the idea that in the natural course of events there will be increases in population, main roads will be built and the land will become useful for development and home sites. They have engineers survey the land and make maps of it. They have streets, alleys and other public places shown on these plats, and they are recorded. In due course, main thoroughfares are built which will attract people to the land. Lots are sold and houses are built. The dedicators or owners of the land knew and did not intend that all streets, alleys and ways would be put to public use immediately, but that they would be put to public use with changing conditions and as the need became evident.
Florida is filled with lakes, bays and rivers. It has the most wonderful beaches in the world and hundreds of miles of shoreline. Subdividers and developers plat the lands bordering on the waters in Florida and show alleys, streets and roadways running to the water with lots for sale bordering on the water.
In this case it is undisputed that the County of Pinellas opened up and paved the main thoroughfare, Pass Avenue, in this subdivision soon after the plat was recorded. This was a clear and unmistakable acceptance of this main thoroughfare shown on the recorded map long prior to any attempt or suggestion of revocation on the part of any one.
There is another street shown on the plat known as Dock Way very similar to "Bay Place". In 1937 Pinellas County decided to erect a water tank on Dock Way and to place water pipes under the street. It developed that some individual was attempting to claim title to this street. The county took the necessary action to evict the individual and to erect and install the water pipes and a tank and it has been open to the public ever since. The testimony with reference to this matter was undisputed and in addition thereto, the Minutes of the Board of County Commissioners show that in 1939 one Stanley T. Scott advised the Board of County Commissioners that he had been negotiating for the purchase of the land known as Dock Way and it had come to his attention that the tank encroached on Dock Way, and that the Pinellas County Water Commission and the County Engineer advised him to ask the County Commissioners to vacate Dock Way on which the tank was located. The County Commissioners then referred the matter to the County Engineer and the County Attorney for an investigation and report. At a subsequent meeting of the County Commissioners Mr. Scott appeared before the Board as shown by the Minutes. These Minutes then show that the County Engineer and County Attorney recommended that "as this was platted as a public highway, the request of Mr. Scott be denied." Their report was unanimously adopted and Mr. Scott was directed to vacate Dock Way. At a subsequent meeting of the Board on August 1, 1939, a resolution was passed as shown by the Minutes of the Board of County Commissioners reciting that it had come to the attention of the County Commissioners that Dock Way was about to be assessed by the Tax Assessor and that said Dock Way "is and has been for many years a public way and in the opinion of this Board not subject to taxation." After these recitals the Board then resolved that the Tax Collector be required "not to assess said area designated Dock Way."
Until the filing of this suit there had never been any dispute regarding the opening of any of the streets except Dock Way and the County Commissioners took prompt action to protect the public in that case.
The main purpose of these cross-streets from Pass Avenue to the Gulf or to the Bay was to give access to the public to the water. It mattered not whether access *655 was obtained by the use of automobiles, tractors, trucks, horse and buggy, or by pedestrians walking to the water. The record in this case shows that Pinellas County accepted, opened up and paved Pass Avenue, the main thoroughfare shown on the recorded plat; that it took proper action to evict an individual from Dock Way and preserved the same for public use, and that many of the other side streets were used by the public long prior to any revocation or attempted revocation of the offer to dedicate the roads and streets shown on the recorded plat. Under these facts, reason and logic, and the decided weight of authority, sustain the conclusion, and we so hold that the County of Pinellas is presumed or deemed to have accepted the offer of dedication of all of the streets shown on the recorded plat so as to make the dedication complete, unless, prior to such acceptance, some person has acquired ownership, title and right to possession of, a particular street by (a) mesne conveyances, or (b) adverse possession, or (c) the public authorities are estopped as to a particular street by the well-known principles of estoppel.
This brings us to the question of any title, ownership and right to possession of the appellees in and to "Bay Place", acquired prior to acceptance of the offer of dedication. They claim, first, that they own the property by mesne conveyances. The first deed in the chain of title is that from Indian Rocks Realty Company to the Pinellas County Title Company on the 4th day of December, 1937. From the evidence it is clear that this did not attempt to convey any right, title or interest in "Bay Place" except the rights which had been reserved in the dedication set forth in the recorded plat. This deed did not attempt to convey "an easement * * * given to the County of Pinellas for public highways only." As a matter of fact, this deed specifically and particularly recognized the existence of "all streets or other thoroughfares as shown on the plat of Indian Rocks South Shore Subdivision". This intention not to convey the easement given to Pinellas County of the streets shown on said plat is clearly evidenced by that part of the deed describing the property conveyed, reading as follows:

"Particularly conveying riparian rights and submerged lands abutting all streets or other thoroughfares as shown on the plat of Indian Rock South Shore as this plat appears of record in Plat Book 4 on page 20 of the public records of Pinellas County, Florida." (Italics supplied.)
It may be further noted that when this so-called deed was given, the undisputed testimony shows that at the time the Indian Rocks Realty Company was heavily indebted to the Pinellas County Title Company and it is claimed that the deed was made, executed and delivered as security for this debt, and was, therefore, a mortgage. It is unnecessary to decide this question. On the 19th of January, 1938, W.C. Wells and wife received a deed from Pinellas County Title Company which attempted to convey the area shown on the recorded plat known as "Bay Place". On July 27, 1944, Wells made a deed to the appellees which included the area known as "Bay Place" as shown on the recorded plat.
It, therefore, appears that when the so-called deed was made to the title company in 1937, there was no assertion of ownership of the easement for highway purposes which had been granted to Pinellas County of "Bay Place". The first time there was any attempt to convey any rights as to the easement for highway purposes in "Bay Place" was in the deed from Wells to the appellees on July 27, 1944. Prior to that time the County had accepted, opened and improved Pass Avenue and Dock Way, and other streets from Pass Avenue from the Bay and the Gulf had been used by the public. If the deed from Wells to the appellees on July 27, 1944, may be construed as an attempt to revoke the dedication, it came too late because the right to revoke did not exist after the County had accepted the dedication as above set forth. We hold that the appellees did not acquire any right or title to the easement in "Bay Place" for public highway purposes by reason of the deeds above mentioned.
*656 The appellees also claimed their rights in "Bay Place" and to close the same for public use had been established by adverse possession. It is rather difficult to determine from the final decree whether the Chancellor below found in favor of the appellees by reason of the deeds of adverse possession or because of estoppel, or on all of the asserted grounds.
It is claimed that the adverse possession began in January of 1938 continuing to 1950. It is undisputed that neither the Wells nor the appellees returned for taxation or paid any taxes on "Bay Place" at any time before the filing of this suit. Subsection 5 of Section 95.17, F.S.A., was as follows:
"(5) Provided, however, no such land shall be deemed to have been held adversely under the provisions of subdivisions (1), (2), (3) and (4) above unless within one year after the entry by such adverse owner he has returned the said property by proper legal description to the assessor of the county wherein situated and has subsequently paid all taxes theretofore or thereafter levied and assessed against the same and matured installments of special improvement liens theretofore or thereafter levied and assessed against the same by the state and county and by any city or town if such property be situated within any incorporated city or town, before such taxes become delinquent; except that this provision shall not be applicable to suits pending on June 5, 1939."
The above section remained in full force and effect until the Legislative session of 1945. In the case of Salls v. Martin, 156 Fla. 624, 24 So.2d 41, the Chancellor in the Court below upheld the validity of this Statute and on appeal to this Court his decision was affirmed in the following language:
"Plaintiff challenges the right of defendant to plead adverse possession because he was unable to show a return * * * of taxes as required by Sections 95.17 and 95.18, Fla.Stats. 1941, F.S.A. This challenge was sustained by the circuit judge and in this he was correct."
See also Palmer v. Greene, 159 Fla. 174, 31 So.2d 706.
Such possession as is shown in this case, without any compliance with the above statute, could not justify a decree in favor of the appellees, because of adverse possession. Only five years elapsed from the time of the repeal of the Statute until the filing of this suit and, therefore, the statutory period of seven years could not apply.
It is next urged by the appellees that they were entitled to the relief granted to them because of the long delay of public authority to improve the street in question and the appellant is now estopped to assert any rights to the same because of the improvements made thereon by the appellees. The appellees correctly assert that this court has applied the doctrine of estoppel against municipal corporations in some cases but the facts in those cases were different from the facts in this case. For example, in the City of Miami v. Florida East Coast R. Co., 79 Fla. 539, 84 So. 726, we simply held that the platting of land and selling lots with reference to the plat so far as the public was concerned, amounted to a mere offer of dedication which must be accepted before there is revocation in order to complete the dedication. In this case there was an acceptance of the offer of dedication as we have already pointed out.
In the case of New York Life Insurance Company v. Oates, 122 Fla. 540, 166 So. 269, this Court said:
"Law of `estoppel' applies to words and admissions or conduct whereby one person willfully, culpably, or negligently causes another to believe in the existence of a state of things by which the other may be induced to act so as to change his previous position to his injury."
There is no conduct shown on the part of Pinellas County whereby the appellees or the Wells were wilfully, culpably, or negligently caused to believe in the existence of a state of a state of things by *657 which they were induced to act so as to change their position to their injury. The appellees and their predecessors knew that Pass Avenue had been opened and paved by the County. They knew or should have known that the County had protected the rights of the public in and to Dock Way. They knew or should have known that without the opening and paving of Pass Avenue, the lots on each side of "Bay Place" would have been inaccessible and would never have been of their present value. They knew that the plat had been filed for record and it contained an offer to dedicate all of the roads, streets and public places shown on the plat to Pinellas County for highway purposes. They knew or should have known that the cross-streets shown upon said plat were for the purpose of enabling the public to get either to the Gulf or to the Bay. They knew that "Bay Place" was shown upon this map and that it was bounded on one side by Pass Avenue and on the other side by a meander line on the Bay. Neither Pinellas County nor its successor, appellant here, was estopped to open and improve "Bay Place" as a highway for the use of the public, including the appellees. Any title held by the appellees to "Bay Place" is subject to the easement shown by the dedication on the recorded plat.
Reversed with directions to set aside the final decree appealed from, dissolve the injunction and to dismiss the bill of complaint.
SEBRING, C.J., and CHAPMAN and THOMAS, JJ., concur.