418 F.2d 551
 UNITED STATES of America, Plaintiff,
v.
936.71 ACRES OF LAND, MORE OR LESS, Situated IN BREVARD
COUNTY, STATE OF FLORIDA, et al., Defendants.
Sarah E. WALKER et al., Appellants-Cross-Appellees,
v.
Edwin A. McQUATERS and Helen E. McQuaters et al.,
Appellees-Cross-Appellants.
 No. 27172.
 United States Court of Appeals Fifth Circuit.
 Oct. 13, 1969.
 
 Ralph H. Bearden, Jr., Miami, Fla., for Walker.
 Harlan Tuck, Giles, Hedrick & Robinson, Orlando, Fla., for McQuaters.
 Norman C. Roettger, Jr., Ft. Lauderdale, Fla., for Canaveral Beach, Inc.
 Francis G. Rearick, Lands Div., Dept. of Justice, Orlando, Fla., J. Kenneth Ballinger, Asst. Atty. Gen., Tallahassee, Fla., Charles M. Harris, Crofton, Holland & Starling, L. C. Crofton, Titusville, Fla., for Alys A. Simons.
 Before WISDOM and MORGAN, Circuit Judges, and DAVIS,* Judge of the United States Court of Claims.
 WISDOM, Circuit Judge:
 
 
 1
 The United States has condemned certain lands in Brevard County, Florida for use in connection with the Space Program. This suit resulted from a dispute over rights to the condemnation proceeds. The intervenor, Sarah Walker, contends that the right to redeem land willed to her by her husband, but taken by the State for non-payment of taxes, did not end when the State auctioned the land, since the auction was procedurally faulty. She contends also that part of the land platted as streets never passed to the State in the first place. The district court held against Mrs. Walker without passing upon the validity of the auction. We affirm.
 
 
 2
 The land in question consists of two different tracts, Number 3912 and Number 3913. Each has a separate history.
 
 TRACT 3913
 
 3
 Walker Properites, Inc., a Florida corporation, bought a portion of Tract 3913 in 1925. George R. Walker, Sarah Walker's husband, owned 996 of the corporation's 1000 shares of stock; F. A. Newell and F. N. Boudreau owned two shares each. In 1936 the Governor ordered the corporation dissolved for failure to pay its corporation capital stock tax. Under Florida law, title to the assets of a dissolved corporation vests for twenty years in the last board of directors as trustees for the stockholders.[1] After twenty years, title passes to the stockholders themselves.
 
 
 4
 Sarah Walker contends that she is the ultimate successor to the interest of Walker Properties, Inc. Her husband, George R. Walker, died in January 1953. His will, bequeathing all his property to Mrs. Walker, was not probated until 1966, but, under Florida law, as the trial judge held, the passage of title under the will dated back to the time of her husband's death.[2] Mrs. Walker therefore acquired his 996/1000 undivided interest of the land in 1956, or twenty years after the dissolution of Walker Properties, Inc., when title in its assets reverted to the individual stockholders. Another stockholder, F. N. Boudreau, executed a quit-claim deed in favor of Mrs. Walker in 1963, conveying his interest (two shares) in the corporate assets.
 
 
 5
 In 1930, 1931, and 1932 the corporation failed to pay property taxes on the land, and the tax collector for Brevard County issued tax sale certificates for nonpayment. In 1939 title to the lands which were subject to outstanding tax certificates passed to the State under Florida's 'Murphy Act'.[3] Although the former owners, the Walker properties board and their successors, ceased at that time to have an absolute right of redemption, they continued, under Florida's statutes, to have a 'right' to repurchase the property with the approval of the Trustees of the State Internal Improvement Fund.[4] That opportunity to repurchase is what Sarah Walker asserts in the present case.
 
 
 6
 In 1944 the Trustees of the Internal Improvement Fund, acting through their agent, the Clerk of the Circuit Court, issued Brevard County Deed No. 719 to Edwin A. and Helen E. McQuaters (appellees), as a result of their bid at the sale of a portion of Tract 3913. The McQuaters recorded the deed on July 10, 1944. In 1944 the State also auctioned off another part of Tract 3913 to the McQuaters; they recorded this second deed, Number 913, on May 14, 1945. Sarah Walker alleges that the sales were invalid, because the successful bidders submitted their offers through the Clerk of the Circuit Court, rather than in person. The McQuaters, who owned an adjoining homestead, were in open, adverse, notorious, continuous, and exclusive possession of the deeded land for a period of more than seven years, according to the finding of the district court. They paid all taxes on the land. In 1960 the McQuaters conveyed the property to Canaveral Beach, Inc.
 
 
 7
 The United States condemned Tract 3913 in August 1962, naming Canaveral and the McQuaters as defendants. In April 1964 Sarah Walker intervened. She asserted first that the State's sale of the land to the McQuaters had been invalidated by the fact that the McQuaters had submitted their bid through the auctioning Clerk of Court, rather than by appearing personally. She also maintained that the streets originally platted on Tract 3913 had never been dedicated as public property, and that since they had never been assessed for taxation, they had never passed to the State under the Murphy Act. Instead, she said, title had continued in Walker Properties, Inc. and its successors. In the alternative, as a basis for her claim to the streets, Mrs. Walker alleged that the State had never acquired more than an easement in the land, and that this interest had reverted to her at the time of the condemnation, when the streets ceased to be used for their original purpose. She therefore claimed either the right to repurchase the State's interest in the land, or, alternatively, a right to the proceeds relating to condemnation of the streets.
 
 
 8
 The district court found that the McQuaters's adverse possession of the land as against Mrs. Walker for the statutory seven-year period had barred any claim she might have to the land. Insofar as she based her claim upon the invalidity of the State sale, the court held that the State would be estopped to deny the validity of its own deed to the McQuaters. The court also held that the platted streets had been dedicated, and that the State had passed valid title in them to the McQuaters.
 
 TRACT 3912
 
 9
 Tract 3912, like Tract 3913, passed in 1939 from the Board of Directors of Walker Properties, Inc. to the State under the Murphy Act. In 1944 the Circuit Court Clerk G. M. Simmons who was auctioning the land for the Trustees of the Internal Improvement Fund, himself bought the tract. He continued in possession until the United States condemned the land in 1962. Sarah Walker contended that Simmons's sale to himself was a nullity, that title continued in the State, and that she, as successor to Walker Properties, Inc. had the right to repurchase the land or the right to the condemnation award that now stands in its place. Initially the district court agreed with her contention. It ordered that title to the condemnation award for Tract 3912 be vested in the Trustees of the Internal Improvement Fund. In a supplemental decree, however, the Court noted that the award had already been paid into the estate of G. M. Simmons, and that the Trustees of the Internal Improvement Fund, although parties to the suit, had never asserted any interest in the award; it held therefore that 'the Trustees cannot now ask that the money be repaid into the registry of the Court'. Sarah Walker's rights, which could rise no higher than the State's, were extinguished.
 
 I.
 
 10
 We consider first the intervenor's claim to those portions of Tract 3913 deeded by the Trustees of the Internal Improvement Fund to the McQuaters in 1944 and 1945. All parties agree that the State took absolute title to that land in 1939 by operation of the unequivocal terms of the Murphy Act. Assuming for the moment that the McQuaters's deed was utterly void because of the 'fraudulent' tax sale, title to the land would have remained in the State until 1962, when it was replaced by the proceeds of the federal condemnation. Section 192.381 of the Florida Statutes, F.S.A. empowers the Trustees to resell Murphy Act lands to their former owners, or to the owners' successors. The statute however says nothing about the power of the Trustees to dispose of proceeds that have replaced the land. More importantly, it merely empowers the Trustees to resell to the former owners; nowhere does it create a duty to permit redemption:
 
 
 11
 'Lands acquired by the state through * * * the Murphy Act * * * may, at the discretion of the trustees of the internal improvement fund, be sold and conveyed, by the state and through its said trustees, * * * (to the successors of the former owner) upon such terms and conditions and for such consideration as to the trustees shall seem equitable and proper.'
 
 
 12
 This statute leaves Sarah Walker nothing more than the opportunity to bargain with the Trustees of the Internal Improvement Fund for the chance to 'purchase' the cash award which has replaced tax-delinquent land. To get that chance she puts forward certain supposed rights of the State, rights that State itself does not assert. She herself has no rights in the land, or in the award. Therefore, as the McQuaters point out, she has no standing to protest the supposed fraud of the Circuit Court Clerk in disposing of the land.
 
 
 13
 A party has standing to prosecute a suit in the federal courts only if he is the 'real party in interest' as that term is defined under Fed.R.Civ.P. 17(a). The stricture applies to intervenors as well as plaintiffs. Celanese Corp. v. John Clark Indus., Inc., 5 Cir. 1954, 214 F.2d 551, 556. Whether a person is a real party in interest depends upon his substantive rights, which, in diversity cases and cases like the present one, are determined by state law. American Fidelity & Cas. Co. v. All Amer. Bus Lines, 10 Cir. 1950, 179 F.2d 7. The authorities agree, moreover, that a party has no standing to assert a right if it is not his own. Thus, Professor Moore said of the real-party-in-interest rule at the time of its incorporation in the Federal Rules:
 
 
 14
 'Its meaning perhaps would be more accurately expressed if it read: An action shall be prosecuted in the name of the party who, by the substantive law, has the right sought to be enforced.' Moore, Federal Rules of Civil Procedure: Some Problems Raised By the Preliminary Draft, 1937 Geo.L.J. 551, 564.
 
 
 15
 Similarly, it is elementary that,
 
 
 16
 'The 'real party in interest' is the party who, by substantive law, possesses the right sought to be enforced, and not necessarily the person who will ultimately benefit from the recovery.' Barron and Holtzoff, Federal Practice and Procedure, 482 (Wright ed. 1961).
 
 
 17
 See also: Gagliano ex rel. Gagliano v. Bernsen, 5 Cir. 1957, 243 F.2d 880. Furthermore, the interest sought to be enforced must be 'a present, substantial interest as distinguished from a contingent interest or mere expectancy.' Morgan v. King, 1950, 312 Ky. 792, 229 S.W.2d 976, 978.
 
 
 18
 Sarah Walker in this case claims nothing more than the chance to buy the proceeds of Tract 3913 from the State, once the State's title is secured. Her legal arguments about fraud advance the rights of Florida, rather than her own. We conclude that, as to the fraud argument, she is not the 'real party in interest', and that she lacks standing to make the claim.
 
 II.
 
 19
 The second part of Mrs. Walker's claim to Tract 3913 relates solely to the areas originally platted as streets for the 'Titusville Subdivision' in 1922 by the predecessor of Walker Properties, Inc. The claim has two independent grounds. The first is that the 1922 offer to dedicate the platted streets was never accepted by the county; since these streets were not assessed for taxation by the county, title to them never passed to the State under the Murphy Act, and could not have been resold to McQuaters. The record discloses no formal act of acceptance on the part of the State, but under Florida law acceptance is implied from actual public use. See Seaboard Air Line R. Co. v. Dorsey, 1932, 111 Fla. 22, 149 So. 759. Here, as the district court pointed out, the State did not tax the platted lands. More importantly, however, the State converted one of the streets into a highway running parallel to the ocean. The rule in Florida, as in most states, is that 'acceptance of some of the streets of a platted subdivision shall be considered acceptance of all of the streets' unless 'the intention to limit the acceptance is shown'. Indian Rocks Beach South Shore, Inc. v. Ewell, 1952, Fla., 59 So.2d 647, 652, 32 A.L.R.2d 940. The construction and use of the state highway, added to the failure to tax the platted streets, are ample substitutes for formal acceptance of the offer to dedicate.
 
 
 20
 Mrs. Walker also contends, however, that the State never took title under the Murphy Act to the land platted as streets. She points out that dedication provides no more than an easement for public use, and that when the dedicated land ceases to be used for the designated purpose, full possessory rights revert to the dedicator or his successors. See Robbins v. White, 1906, 52 Fla. 613, 42 So. 841. The United States did not use the platted streets as streets, and the easement therefore no longer exists. The question therefore is whether Mrs. Walker, as opposed to the McQuaters, is the successor to the party that originally dedicated the land, before Walker Properties, Inc. acquired it. The answer to that question in turn depends upon whether the State, by virtue of the Murphy Act, took title just to the land abutting the streets, or to the streets themselves as well.
 
 
 21
 Mrs. Walker argues that the State did not take title. She concedes that
 
 
 22
 '(a) grant of land bounded by a highway carries the boundary to the center of the highway, if the grantor owned to the center, and there be no words or specific description showing a contrary intent.' Lovett v. State, 1892, 30 Fla. 142, 11 So. 550, 555.
 
 
 23
 She points out, however, that this doctrine rests upon the presumed intent of the grantor, and his likely lack of interest in maintaining nothing more than a residual interest in the land occupied by the street. See Florida Southern Ry. Co. v. Brown, 1887, 23 Fla. 104, 1 So. 512. Here, where Walker Properties, Inc. yielded the land in question to the State involuntarily, no such intent may be presumed, or so Mrs. Walker argues.
 
 
 24
 The argument proves too much, however, since the very intent to convey the land, ordinarily a prerequisite to a valid conveyance, is irrelevant in the case of a taking for delinquent taxes. Mrs. Walker's contention is foreclosed by the decision of the Florida Supreme Court in New Fort Pierce Hotel Co. v. Phoenix Tax Title Corp., 1936, 126 Fla. 552, 171 So. 525. In that case the owner of four lots had offered to dedicate an adjoining alley, and then revoked the offer. The state later seized and sold the land for unpaid taxes, and in its tax deed described the lots but not the alley. Did the deed convey the alley as well as the lots? The court stated that 'there can be no doubt but that this question must be answered in the affirmative'. 171 So. at 526. In Fort Pierce Hotel, it will be noted, the State's failure to describe the land between the lots did not prevent the Court from including it in the conveyance, even though the dedication had already been revoked. In the instant case, the failure to mention the streets in the tax certificate or McQuaters's deed is more explainable, and the implication of conveyance is easier to draw, since the dedication had not yet been abandoned. Mrs. Walker attempts to distinguish Fort Pierce Hotel on the ground that it involved tax deeds, as opposed to the Murphy deeds in the case before us. We are unable to see how that distinguishes the cases. We conclude that the intervenor has no right to the award resulting from the condemnation of the streets of Tract 3913.
 
 III.
 
 25
 We come now to Tract 3912. Sarah Walker has no more standing to argue that fraud at the Murphy sale entitles the State to this property than she has to make the same argument as to Tract 3913. Here, however, the State, which does have standing, has belatedly taken up her argument, at least by implication, in a brief on appeal.
 
 
 26
 The State asks us to affirm the district court's original holding that title in Tract 3912 reverts to the State because of Simmons's original fraud in conveying the land on behalf of the State to himself.
 
 
 27
 We agree with the holding of the district court that the conveyance was fraudulent regardless of whether Simmons actually intended to defraud the State. An officer of the State commits fraud when he conducts a tax sale and personally purchases the property offered. See, e.g., Spicer v. Rowland, 1888, 39 Kan. 740, 18 P. 908. Section 194.601 of the Florida Statutes, F.S.A. although enacted after the sale here, rests on the presumption that sales by the Clerk of the Circuit Court to himself are invalid; it provides for disposition of the property where such sales have occurred.
 
 
 28
 The State, however, has proved anything but diligent in prosecuting its claim. As we have noted, it first raised the point on appeal, in a brief filed some 25 years after the sale. Under Florida law, any recorded deed is deemed to be valid twenty years after the recording date as against 'all persons who have not asserted by competent record title an adverse claim'. F.S. 95.23, F.S.A. That statute, read literally, would bar the State's claim in the present case. To be sure we must follow the Florida Supreme Court in treating the statute as a non-mandatory benchmark for determining laches on claims of an equitable nature. See Reed v. Fain, Fla.1961, 145 So.2d 858, reh. 1962, 145 So.2d 864, 866; if the claim advanced after the twenty-year statutory period has peculiar equitable appeal, the chancellor may hear it in spite of the clear statutory language. In the present case, however, the equities are on the other side. Simmons until the condemnation was in undisturbed possession of the land, presumably shouldering the burdens as well as reaping the benefits of ownership. The State, on the other hand, not only failed to press its interest, but affirmatively waived it. In the district court Florida filed a disclaimer of any interest in the land, other than an interest in subsurface mineral rights, for which it has been compensated. We need not decide whether that disclaimer, or the pleadings below, or the original deed itself, have the individual or cumulative effect of estopping the State to claim any title to Tract 3912. It is enough for our purposes that 95.23 sets a presumptive standard for laches, and that the State, by its conduct after the running of the period, encouraged the belief that it had no interest in the land. Florida has more than slept on its rights: waking, it has shoved them aside. In these circumstances we agree with the holding of the district court that, 'the Trustees cannot now ask that the monies be repaid into the registry of the Court'.
 
 
 29
 We conclude that neither Sarah Walker nor the State of Florida has any rights in the disputed condemnation award other than those described by the district court. The judgment below is affirmed.
 
 
 
 *
 Sitting by designation
 
 
 [1]
 Section 9 of Chapter 16880, Laws of Florida 1935, as supplemented by Chapter 20895
 
 
 [2]
 F.S. 731.21, F.S.A
 
 
 [3]
 F.S. 192.38, F.S.A
 
 
 [4]
 F.S. 192.381, F.S.A