# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 19-30071

United States Court of Appeals
Fifth Circuit

**FILED**

February 12, 2020

Lyle W. Cayce
Clerk

LASQUES VASQUES PRUDHOMME, on behalf of Brandon Jamal Reed,

Plaintiff - Appellant

v.

JAY RUSSELL, Sheriff; PATRICK JOHNSON, Warden; DONNA NORMAN,
Medical Director; WILLIAM K. MCCONNELL, Owner; JOHN CREED,
Owner; RICHWOOD CORRECTIONAL CENTER, L.L.C.; RAY HANSON,
Warden, incorrectly named as Warden Ray Henson; MYRA RUSS, incorrectly
named as Myra Ross,

Defendants - Appellees

Appeal from the United States District Court
for the Western District of Louisiana
USDC No. 3:17-CV-1344

Before DAVIS, SMITH, and STEWART, Circuit Judges.

PER CURIAM:*

In October of 2017, two men filed wrongful death suits pursuant to 42
U.S.C. § 1983, both claiming to be the father of a young pretrial detainee who
died while in custody. The magistrate judge consolidated the two actions, held
a hearing to resolve the paternity dispute, and ultimately determined that

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not
be published and is not precedent except under the limited circumstances set forth in 5TH
CIR. R. 47.5.4.

No. 19-30071

Appellant's avowal action[1] was untimely and also a failure on the merits. The district court adopted the magistrate judge's reasoning and analysis and dismissed Appellant's wrongful death suit on grounds that he was not a real party in interest. For the following reasons, we AFFIRM.

## I. Factual & Procedural Background

Appellant Lasques Vacques Prudhomme filed a civil rights suit on October 19, 2017, against various local government entities and officials ("Appellees" or "Ouachita Appellees"), claiming their liability for the death of Brandon Jamal Reed ("Brandon"). In his complaint, Prudhomme referred to Brandon as his son. Brandon died on October 26, 2016 in Appellees' custody as a pretrial detainee at the Richwood Correctional Center in Ouachita Parish.[2] Prudhomme asserted claims for wrongful death, deliberate indifference, and a survival action under 42 U.S.C. § 1983 for violations of the Fourth, Eighth, and Fourteenth Amendments.

About a week after Prudhomme sued, Leslie Reed ("Reed") and Otis McGinnis filed a separate wrongful death and survival action under § 1983, wherein they represented themselves to be Brandon's mother and father. On January 11, 2018, the Ouachita Parish Appellees filed a motion to dismiss Prudhomme's complaint for failure to state a claim pursuant to Rule 12(b)(6). The matter was referred to Magistrate Judge Karen L. Hayes who consolidated the two pending actions for purposes of resolving the paternity conflict.

---

[1] An avowal action is one to establish paternity. *See* LA. CIV. CODE art. 198.

[2] Prudhomme alleged that officials at the correctional facility failed to provide adequate and necessary medical care to Brandon, ultimately leading to his death. Brandon died in custody after he contracted sepsis due to pneumonia from ongoing, underlying chronic health problems.

2

No. 19-30071

On October 8, 2018, Prudhomme filed a motion for paternity/filiation[3] requesting to be acknowledged as Brandon's biological father. He attached as an exhibit an affidavit executed by Reed where she attested that Prudhomme was Brandon's biological father. The Ouachita Appellees responded to Prudhomme's motion on October 15, 2018, arguing that he failed to establish his paternity of Brandon and requesting that his wrongful death and survival suit not be permitted to proceed.

The district court held a hearing on the paternity matter on October 24, 2018. Nine witnesses testified. McGinnis did not attend the hearing. Reed testified that Brandon was born in 1988 and that she had a sexual relationship with Prudhomme at the time Brandon was conceived. She also stated that she had a sexual relationship with McGinnis but she could not remember if it was before or after she began her sexual relationship with Prudhomme. She married McGinnis in 1990—two years after Brandon was born. She stated that she signed an affidavit of paternity in favor of Prudhomme on September 6, 2018, but that she was actually unsure about who Brandon's real father was. She further detailed that she had McGinnis sign Brandon's birth certificate because when she told Prudhomme she was pregnant, he asked her to get an abortion. She also explained that McGinnis continued to provide for her and Brandon from Brandon's birth to his death. She conceded that she never asked either man to submit to a DNA test.

Prudhomme also testified during the hearing and detailed the extent of his relationship with Brandon. He explained that he first met Brandon when

---

[3] "Filiation is the legal relationship between a child and his parent." LA. CIV. CODE art. 178. "Filiation is established by proof of maternity or paternity or by adoption." *Id.* art. 179.

No. 19-30071

he was six years old.[4] He became convinced at that time that he was Brandon's father because Reed told him he was and also because he and Brandon resembled each other. He began paying for Brandon's school tuition, took him to family functions, provided some financial support, and employed him at a restaurant Prudhomme owned. Prudhomme also paid for Brandon's funeral expenses and was listed on the obituary as Brandon's father. Prudhomme admitted that he never got a DNA test or filed an avowal action claiming to be Brandon's father prior to Brandon's death. Three of Prudhomme's family members also testified at the hearing and all three stated that they believed that Brandon was Prudhomme's biological son.

Prudhomme filed a post-hearing motion for sanctions on November 7, 2018 against Reed on the basis that she had provided fraudulent and perjured testimony at the hearing when she claimed that she did not know for sure whether Prudhomme was Brandon's biological father.

The Ouachita Appellees filed a post-hearing memorandum arguing that Prudhomme failed to carry his burden of proving by a preponderance of the evidence that he was Brandon's biological father. They conceded that Prudhomme's testimony was credible and revealed that he truly believed that he was Brandon's father. However, they argued that his belief was mistaken and arose from the false representations of Reed, who had managed to convince two different men that they were Brandon's father. Appellees argued that because Prudhomme failed to file an avowal action within one year of meeting Brandon for the first time when he was six years old, his right to do so was extinguished upon the expiration of the preemptive period. *See* LA. CIV. CODE art. 3458.

---

[4] Other parts of the record state that Prudhomme met Brandon when he was eight or nine years old. For purposes of this appeal, the exact age Brandon was when he met Prudhomme is not overly significant.

No. 19-30071

Reed and McGinnis filed a post-hearing memorandum arguing that Prudhomme's avowal action was untimely. They also argued that the domestic relations exception to federal court jurisdiction prevented the federal court from adjudicating Prudhomme's avowal action.

Magistrate Judge Hayes issued her Report and Recommendation on December 17, 2018. *Prudhomme v. Russell*, No. 17-1344, 2018 WL 6928918 (W.D. La. Dec. 17, 2018). She noted that "under [Louisiana Civil Code] Article 198, Prudhomme needed to file an avowal action: 1) within one year from Brandon's birth (absent the mother's bad faith)–*if* Brandon is presumed to be the child of another man, or 2) no later than one year from Brandon's death. Prudhomme, however, failed to file an avowal action within either deadline." *Id*. at *4. She continued that under Article 195, "[a] man who marries the mother of a child not filiated to another man and who, with the concurrence of the mother, acknowledges the child by authentic act is presumed to be the father of that child." *Id*. at *5. She reasoned that McGinnis married Reed in 1990, signed Brandon's birth certificate, and there was never any evidence that Brandon was filiated to another man at the time. *Id*. On this basis she concluded that a presumption was established that Brandon was McGinnis's child. *Id*. Because Prudhomme did not file an avowal action within one year of Brandon's birth, his right to do so was preempted and no longer existent. *Id*. She further observed that Prudhomme also failed to file an avowal action within one year of Brandon's death on October 16, 2016, so any attempt to do so now using that method is untimely. *Id*.

She continued that even if Prudhomme's avowal action had been timely he nevertheless failed to meet his burden of proof at the hearing. *Id*. at *6. She explained that although it was clear that Prudhomme had a good faith belief he was Brandon's father, the evidence he presented was not enough to prove that he was. *Id*. at *7–8. She noted that Reed was clearly confused as to who

5

No. 19-30071

the father was. *Id.* at \*8. For this reason, the magistrate judge declined to award civil sanctions against Reed. *Id.* She ultimately recommended that the two matters be unconsolidated and that Prudhomme's wrongful death and survival action be dismissed since he failed to show he was a real party in interest in the litigation by proving his paternity/filiation of Brandon. *Id.* at \*9.

The district court adopted the magistrate judge's Report and Recommendation and dismissed Prudhomme's case without prejudice. *Prudhomme v. Russell*, No. 17-1344, 2019 WL 97825, at \*1–2 (W.D. La. Jan. 2, 2019) (emphasis added). As recommended, the district court unconsolidated the two cases, denied Prudhomme's motions for paternity/filiation and sanctions, and dismissed his federal and state law claims against all defendants without prejudice. *Id.* at \*2. Prudhomme noticed his appeal on January 29, 2019.

## II. Standard of Review

We review the district court's legal conclusions de novo and its findings of fact for clear error. *See Guzman v. Hacienda Records & Recording Studio, Inc.*, 808 F.3d 1031, 1036 (5th Cir. 2015) (citation omitted). We review mixed questions of law and fact de novo. *See Dickerson v. Lexington Ins. Co.*, 556 F.3d 290, 294 (5th Cir. 2009).

"Even though federal subject matter jurisdiction of [this case] is not grounded in diversity of citizenship, we nonetheless apply the rules of interpretation that have evolved since *Erie Railroad v. Tompkins*[5] to the controlling state law here under examination." *F.D.I.C. v. Abraham*, 137 F.3d 264, 267 (5th Cir. 1998). "When adjudicating claims for which state law provides the rules of decision . . . we are bound to apply the law as interpreted by the state's highest court." *Id.* at 267–68. If the "state's highest court has not

---

[5] 304 U.S. 64 (1938).

6

spoken on an issue, our task is to determine as best we can how that court would rule if the issue were before it." *Id.* at 268. In that scenario, "we are bound by an intermediate state appellate court decision only when we remain unconvinced by other data that the highest court of the state would decide otherwise." *Id.* (internal quotations marks omitted).

### III. Discussion

Under Federal Rule of Civil Procedure 17, only a "real party in interest" may bring suit in federal court. *United States v. 936.71 Acres of Land*, 418 F.2d 551, 556 (5th Cir. 1969). In the context of a suit for wrongful death resulting from an unconstitutional use of force, a "real party in interest" is defined by state law. *Id.* In Louisiana, to recover on a claim for survival or wrongful death, a plaintiff must fall within the defined hierarchy of beneficiary classes under Civil Code Articles 2315.1 and 2315.2, which prescribe the decedent's surviving father and mother as the proper beneficiaries to bring a wrongful death or survival action when the decedent has no surviving spouse or child. *See Udomeh v. Joseph*, 103 So. 3d 343, 346 (La. 2012).

Civil Code Article 198 defines the time period within which a putative father must file an avowal action to establish paternity for purposes of asserting a wrongful death or survival claim as: 1) within one year of the child's birth if the child is presumed to be the child of another man, or 2) no later than one year from the child's death. Additionally, Article 195 provides that "[a] man who marries the mother of a child not filiated to another man, and who, with the concurrence of the mother, acknowledges the child by authentic act is presumed to be the father of that child."

Here, the magistrate judge initially determined that the one-year-from-birth deadline applied to Prudhomme because another man, McGinnis, was presumed to be Brandon's father. *See* LA. CIV. CODE arts. 195, 198. Citing Article 196, Prudhomme argues on appeal that the presumption that McGinnis

7

is Brandon's father can only operate to the benefit of the child (Brandon), and not to any other party's benefit (here, McGinnis). *See* LA. CIV. CODE art. 196 ("The presumption can be invoked only on behalf of the child. . . . [T]he acknowledgment does not create a presumption in favor of the man who acknowledges the child."); *see also Udomeh,* 103 So. 3d at 347 n.1. Prudhomme's reliance on Article 196 is misplaced because the magistrate judge afforded the presumption to McGinnis under Article 195 on grounds that he signed Brandon's birth certificate *and* married Brandon's mother. *See* LA. CIVIL CODE art. 195 ("A man who marries the mother of a child not filiated to another man and who, with the concurrence of the mother, acknowledges the child by authentic act is presumed to be the father of that child."). Article 196 in contrast, only applies when a man only signs the child's birth certificate. Further, Article 195 does not contain the limitation found in Article 196 that the presumption can only operate to the benefit of the child.

Accordingly, the district court properly concluded that Prudhomme's avowal action was perempted on grounds that it was not filed within a year after Brandon's birth or within one year of his death. *See* LA. CIVIL CODE art. 198 ("If the child is presumed to be the child of another man, the action shall be instituted within one year from the day of the birth of the child . . . . [or] no later than one year from the day of the death of the child.").

Because we hold that the district court correctly resolved this case on peremption grounds under Article 195, we need not discuss its alternative merits-based conclusions.

## IV. Conclusion

The district court's judgment is AFFIRMED.

8